## Kingman & Co. v. The Hanna Wagon Co.

1. EVIDENCE—*Of Quality, When Inadmissible.*—In an action to recover damages for a refusal to order, receive and pay for certain goods under a contract, where the proofs show the defendant had not repudiated the contract or refused to receive the goods on account of

Kingman & Co. v. Hanna Wagon Co.

their defective quality, evidence of defects in certain quantities of the goods, which were received and paid for under the contract, is inadmissible for the purpose of showing an excuse for a failure to order the full quantity of goods required by the contract.

2. WAIVER—*What is Not Sufficient to Show.*—The fact that goods were sold and delivered by a vendor to a purchaser after the expiration of a contract of sale for similar goods, theretofore existing between them, without any further or definite agreement having been made, is insufficient to show a waiver of any liability under the original contract which then existed.

3. DAMAGES—*Measure of—Breach of Contract—Loss of Profits.*— When parties contract, the one to manufacture wagons and boxes, and the other to buy and pay for them at a fixed price, and the latter afterward refuses to do so, the measure of damages is the difference between what it would have cost to make and deliver such wagons and boxes and the price agreed on in the contract to be paid therefor.

4. SAME—*The Rule at Common Law.*—The general rule of the common law is that damages are to be assessed at the pecuniary amount of the difference between the state of the plaintiff upon a breach of the contract and what it would have been if the contract had been performed; that is, the benefit that the party injured would have received if the contract had been kept. He is, so far as money can do it, to be placed in the same situation as if the contract had been performed.

**Assumpsit,** breach of contract. Appeal from the Circuit Court of Peoria County. The Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 17, 1897.

STEVENS, HORTON & ABBOTT, attorneys for appellant.

As a general rule the measure of damages for the breach of an executory contract is actual compensation. See Field on Law of Damages, Section 244; Hadley v. Baxendale, 9 Exch. Rep. 341; Griffin v. Colver, 16 N. Y. 489; Phelan v. Andrews, 52 Ill. 486; Strawn v. Cogswell, 28 Ill. 457; Kountz v. Kirkpatrick, 72 Pa. St. 376; Devlin v. Mayor, etc., 63 N. Y. 8.

Where a party accepts a partial delivery of goods purchased after the time fixed for such delivery the acceptance of such part does not oblige him to accept the residue. Bradley v. King, 44 Ill. 339.

WINSLOW EVANS, attorney for appellee, contended that while the general rule is that where there is a contract to

deliver goods at a certain price, and the purchaser refuses to accept and pay for the goods, the measure of damages is the difference between the contract price and the market price, because the seller may take his goods into the market and obtain the current price for them.    Yet where, from the nature of the article, there is no market on which the article can be sold, this rule is not applicable.    Leake's Digest, Contracts, 1060.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action brought by appellee against appellant to recover damages for the alleged breach of a contract in writing, entered into between the parties, dated December 22, 1892, and which contract was modified by a subsequent agreement in writing, bearing date March 23, 1894.    Both the parties are corporations, appellee being engaged in the manufacture of wagons, and appellant being an extensive dealer in all kinds of farm machinery and implements, and both having their headquarters, and doing business, at Peoria, Illinois.    The contracts being lengthy, we do not deem it necessary to recite them *in extenso*, but, in substance, the first agreement provided for the manufacture and sale by appellee to appellant of 3,000 wagons, to be delivered from February 1, 1893, to February 1, 1894, and an additional 3,000 wagons to be delivered from February 1, 1894, to February 1, 1895, specifying the number to be delivered each month, and providing in detail for the making and delivery of the wagons and the parts thereof, for the packing and marking of the same, the prices and terms of settlement.    The parties entered upon the execution of the contract, but prior to March 22, 1894, differences had arisen between them in relation thereto, which led to the further agreement or modification of the contract of that date.    By this modification, appellant agreed to buy and receive from appellee 1,500 wagons, and 500 extra cottonwood boxes, at the prices mentioned in the original contract, to be taken in equal monthly deliveries, between April 1, 1894, and

February 1, 1895; also 100 poplar boxes at the price of $8.50 each, and for all additional poplar boxes $9 each.   It was also agreed that the original contract should remain in full force and effect, except as modified by the later agreement.

The modification also contained the following stipulations, viz.:

" It is further agreed that in consideration of the foregoing agreements, both parties hereto cancel all claims against each other by reason of any alleged default or defaults up to this time in the performance of said contract, dated December 22, 1892, except as to repairs on wagons now out that are defective.   *   *   *

The party of the first part further agrees that the wagons and parts to be furnished by them under this contract shall be well constructed, of good material, and with all improvements as proposed; to be well finished and well made throughout, and to be a first-class wagon."

By the original contract appellant was given the exclusive right to sell wagons of appellee's manufacture in the States of Illinois, Missouri, Kansas, Arkansas, Indian and Oklahoma Territories, western half of Kentucky and Tennessee, Iowa, Nebraska, the south half of Minnesota and the south half of South Dakota.

By this contract and modification, the wagons and parts were to be manufactured by appellee, and delivered free on board the cars at its factory, " as ordered;" and within the ten months from April 1, 1894, to February 1, 1895, appellant was to order and receive the entire number of 1,500 wagons in equal monthly installments, with a slight variation not to exceed twenty per cent from month to month.

It was therefore incumbent upon appellant to order and receive from appellee, an average of 150 wagons per month, and not less than 130, nor more than 180 in any one month during the whole period.   But notwithstanding the fact that appellee was frequently calling for orders, and complaining because they were not received, appellant ordered and received in the month of April only sixty-six wagons and

twenty boxes. During all the months of the contract period, except May and August, appellant failed and refused to order and receive the number of wagons required by the contract, so that at the end of the time specified for it to have taken the 1,500 wagons, it had ordered and received only 808, being 692 short of the number required by the contract. And of the 600 boxes mentioned in the contract, being 500 extra cottonwood and 100 poplar boxes, appellant ordered and received but 207, being 393 less than the number contracted for.

This suit was brought to recover damages for a failure to receive and pay for 692 wagons and 393 boxes, which appellee claims appellant should have ordered and received during the ten months' time mentioned in the modification of the contract.

It appears from the evidence that after the expiration of the contract period, that is, after February 1, 1895, appellant ordered and received from appellee 179 wagons, and there is a controversy between the parties as to whether these last mentioned wagons are to be considered as delivered and received as a part of the 1,500 contracted for. Appellant insists they were delivered in pursuance of the contract, while appellee as strongly contends that they had nothing to do with the contract, and should not be credited thereon.

The defense relied upon as an excuse for failing to perform the contract, was, that the wagons were so defective as to justify appellant in refusing so to do.

There was a trial by jury, resulting in a verdict in favor of appellee for $4,545, upon which the court rendered judgment after overruling a motion for new trial.

Various errors are assigned upon the record, but the principal grounds relied upon for a reversal are, the refusal of the court to admit evidence as to the defects in certain wagons received and paid for by appellant; the refusal to allow credit for the 179 wagons received after February 1, 1895; the alleged erroneous basis adopted by the court for the assessment of damages, and that the damages are excessive.

Kingman & Co. v. Hanna Wagon Co.

As to the first point we are of the opinion the court ruled correctly. The proofs fail to show that appellant ever repudiated the contract or refused to receive the wagons on account of their defective quality. On the contrary, it continued to order, receive and pay for wagons during the whole of the contract period, but not to the extent and number required by the contract. Had the evidence shown such repudiation of the contract, and refusal to receive because of the defective condition of the wagons, it might have been a question under the authorities whether the evidence should have been admitted or not, for the reason that there was a warranty in the contract, which would furnish appellant an ample remedy for any damages it might sustain by reason of its breach. But it is unnecessary to consider what the effect would have been, had there been a repudiation of the contract and an entire refusal to perform, because no such case was made, or sought to be made, by the evidence. As we understand it, the evidence was not offered for purposes of recoupment, but for the sole and only purpose of showing an excuse for failure to order the full number of wagons required by the contract. For this purpose it was improper and the court was right in rejecting it. In appellant's letter of May 7, 1894, it was stated that the wagons had given "very good satisfaction," and it would seem from all the evidence that the reason appellant did not order all the wagons contracted for, was because of the depressed condition of the trade, rather than on account of any failure on the part of the wagons to comply with the warranty.

As to the second point we see no error in refusing to allow credit for the 179 wagons delivered and paid for after February 1, 1895. In appellee's letter to appellant, dated November 21, 1894, the latter was distinctly informed, that appellee would insist on the full performance of the contract, and that for any failure to take and settle for wagons according to its terms, appellant would be held liable. When the contract period expired on February 1, 1895, appellant was in default to the extent of 692 wagons, 393 boxes, and its

liability was then fixed, unless the proofs show a waiver of performance on the part of appellant. The burden of proving such waiver was on appellant, and no such proof is found in the record. The court properly instructed the jury, that if they should find from the evidence that any wagons delivered after February 1, 1895, were by agreement or understanding of the parties delivered on the contract of March 22, 1895, then they should allow therefor in estimating the damages. On this point the jury found against the contention of appellant, and we see no reason for disturbing such finding. We think the mere fact that the wagons and boxes were sold and delivered by appellee to appellant, after the contract period had expired, without any further definite agreement having been made, was insufficient to show a waiver as to any liability which then existed.

We find no error on the part of the court in this regard.

It is strenuously argued that the court adopted an erroneous method for the estimation of the damages sustained, in that it allowed proof as to the cost of manufacture of the wagons and boxes, and allowed the difference between such cost and the contract price, this cost being limited to the value of the raw material and the manual labor put upon the wagons and boxes, excluding all cost of running the office, superintendent's salary, secretary, bookkeeper, stationery, lighting, heating, taxes and other expenses of running the business.

Among other instructions of a similar character, the court gave to the jury the following, viz.:

17. If you find from the evidence that the defendant has failed and refused to take a portion of the wagons and extra boxes mentioned in the contract, and pay for the same, and has thereby broken the contract in evidence, as charged in the declaration, then the plaintiff is entitled to recover damages in this case from the defendant for breach of such contract and for failure to take and pay for the wagons and extra boxes in question. The measure of the plaintiff's damages in such case is the difference between what it would cost the plaintiff to make and deliver such wagons and extra boxes

and the price which the defendant agreed, in and by its contract, to pay the plaintiff therefor; and whatever evidence shows the amount of these damages to be, it is your duty to assess the same in favor of the plaintiff.

Under the evidence in this case we think there was no error in giving this instruction, nor in the theory adopted by the court as to the basis upon which the damages should be assessed.

The general rule of the common law is stated to be, that damages are to be assessed at the pecuniary amount of the difference between the state of the plaintiff upon a breach of the contract, and what it would have been if the contract had been performed. In other words, the measure of damages is the benefit that the plaintiff would have received if the contract had been kept. He is, so far as money can do it, to be placed in the same situation as if the contract had been performed. Leake, Dig. of the Law of Contracts, 1044 (Ed. 1878).

While the general rule is, that where there is a contract to deliver goods at a certain price and the purchaser refuses to accept and pay for the goods, the measure of damages is the difference between the contract price and the market price, because the seller may take his goods into the market and obtain the current price for them, yet where from the nature of the article there is no market in which the article can be sold, this rule is not applicable. Leake, Dig. of Contracts, 1060.

Under the circumstances of this case the plaintiff had no market in which to sell the wagons manufactured by it. The contract gave the appellant the exclusive right to sell wagons of the Hanna Wagon Company's manufacture in the State of Illinois and many other States and Territories, and hence it had no market in which to sell its product, and therefore the rule above mentioned did not apply and could not be adopted for ascertaining the damages.

In the case of Masterton v. The Mayor, etc., of Brooklyn, 7 Hill, 61, the plaintiff had contracted with the defendants for the furnishing and delivery of marble wrought in a par-

ticular manner so as to be fitted for use in the erection of a certain building, and was prevented from fully performing the contract by the default and refusal of the defendant. The plaintiff's claim was substantially one for not accepting goods bargained and sold. It was held that where the article sold has no market value, an investigation into the constituent elements of the cost to the party who has contracted to furnish it becomes necessary; and that, compared with the contract price, will afford the measure of damages. If the cost should equal or exceed the contract price the recovery would be but nominal; but if the contract price exceeds the cost the difference would constitute the measure of damages.

The case of Baltimore & O. Ry. Co. v. Stewart (Md.), 29 Atl. Rep. 964, was an action for breach of contract made by the plaintiff with the B. & O. Ry. Co. for furnishing material and doing masonry work in the construction of a bridge. The trial court instructed the jury, that the plaintiffs were entitled to recover such amount as the jury might .find would compensate them for the loss, if any, which they might have suffered by reason of the stoppage of the work by the defendant, the measure of damages being the difference between what they would have been paid for the entire work when completed, at the contract price, and what it would have cost the plaintiffs to do and complete the same. It was held that the instruction was proper.

In Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, the defendant had agreed in writing to purchase from the plaintiff, rails to be rolled by the latter and drilled as should be directed by the defendant, and to pay for them $58 per ton. Defendant refused to give directions for drill-ing, and, at his request the plaintiff delayed rolling any of the rails until after the time prescribed for their delivery, and then the defendant advised the plaintiff that he should decline to take any rails under the contract.

It was held, 1st, that the defendant was liable in damages for the breach of the contract; 2d, that plaintiff was not bound to roll the rails and tender them to the defendant ;

and, 3d, that the proper rule of damages was the difference between the cost per ton of making and delivering the rails and the $58 contract price. The court cite approvingly the case of Masterton v. Mayor of Brooklyn, *supra*, following United States v. Speed, 75 U. S. (8 Wallace) 77, and United States v. Behan, 110 U. S. 338.

Under these authorities we think there is no doubt that the rule adopted by the court for the assessment of damages was the correct one, and we are of the opinion that under the facts of this case the cost of producing the wagons in question would be properly limited to the cost of the raw material and the expense of labor necessary to put it together as a finished wagon.

Undoubtedly when parties contemplate establishing a manufacturing business, they must take into consideration the cost of the plant, interest on the investment, insurance and taxes, cost of superintendence, of keeping the books, and any other expenses to be incurred in carrying on the business, as well as the cost of raw material and labor, for the purpose of ascertaining what it will cost to put the product on the market, thus enabling them to determine whether the business can be carried on at a profit. But the case stands upon a different footing when the plant is already in operation and is being run as a going business, having its superintendent, secretary, bookkeeper and all other employes necessary to successfully carry it on. The taxes and insurance must be paid whether the business is profitably carried on or not. And when a manufacturing plant is in full operation, having its full complement of employes, the salaries and pay of the latter must be made from the profits of the business. In this case appellee was bound to keep in condition to carry out the contract. To do so it must have its superintendent, bookkeeper and other employes. These expenses went on just the same whether appellant sent in orders under the contract or not. There is nothing in the evidence to show that these expenses were lessened one single dollar because of the failure of appellant to send in orders as required by the contract. Had the orders been received according to

the contract, appellee would have been benefited to the extent of the difference between the cost of the raw material and the labor necessary to convert it into the finished product, and hence it can only be made good by allowing it damages on that basis. · There was no error in the rulings of the court upon this point.

As to the complaint that the damages assessed by the jury are excessive, we think the point is not well taken. The jury have evidently assessed the damages at $6 each on the 692 wagons not taken at the end of the contract period, to wit, February 1, 1895, which would amount to $4,152, and have also allowed $1 each on 393 boxes not taken during the same period. There is no dispute that $1 would represent the average profit on the extra boxes, and we think the evidence fully warrants the allowance of $6 as the loss of profits on each of the 692 wagons not taken. Adding together the two items of loss—that is, $6 each on 692 wagons, and $1 each on 393 extra boxes, produces the sum of $4,545, the amount of damages assessed by the jury as returned by their verdict. We are of the opinion the verdict was justified by the evidence.

Finding no error in the rulings of the court on the evidence, nor in the giving and refusing of instructions, the judgment will be affirmed.