## Wytheville.

TAYLOR AND OTHERS V. MALLORY.

JUNE 9, 1898.

Absent, Cardwell, J.

1. APPEAL AND ERROR—*Exceptions in Trial Court—Failure to Assign as Error in Petition.*—Although an exception is taken to the ruling of the trial court on the admission of certain evidence, yet, if the petition for a writ of error makes no allusion to it, and no ground of objection is pointed out or suggested, and this court can perceive none, the exception will be treated as not well taken.

2. EVIDENCE—*Exception Well Taken—Proving Same Facts by Other Witnesses—Harmless Error.*—Although an exception to the testimony of a witness may be well taken, if the same fact is subsequently proved by other witnesses without objection, the error will be deemed to be harmless.

3. TRIALS—*Depositions—Appellate Court—Papers not Made Part of Record Will not be Considered.*—The deposition of a witness taken in an action at law may be read at the trial where the trial court is satisfied from evidence produced before it that, on account of sickness, the witness is unable to attend. The correctness of the ruling of the trial court, however, must be determined from the record. This court will not consider certificates or other papers produced in argument, but omitted from the record.

4. EJECTMENT—*Fraudulent Deed Part of Chain of Title—Jury to Determine Whether Fraudulent or not.*—In an action of ejectment where a deed alleged to be voluntary and fraudulent forms a part of the plaintiff's chain of title, it is the province of the jury to determine, under proper instructions from the court, whether the deed was voluntary and fraudulent or not.

5. VOLUNTARY DEED—*Not per se Fraudulent—Prima Facie Fraudulent as to Existing Creditors—Burden of Proof.*—A voluntary deed, founded on a good consideration, is not *per se* fraudulent as to existing creditors, but is so *prima facie,* and the burden of proof is on those claiming under it

to show its validity. If the grantor retained ample and sufficient property to pay all his just and lawful debts, his *bona fides* is established, and it cannot be said that the deed was made to hinder, delay or defraud his creditors.

6. Ejectment—*Heirship of Plaintiff—Act of Limitations—Questions for Jury.* Whether a plaintiff in ejectment is the sole heir of one through whom he traces title, and whether the defendant has had adverse possession for a sufficient length of time to bar the plaintiff's claim of title, are questions for the jury. In the case at bar both questions were submitted to the jury under proper instructions from the court.

7. Insolvent Debtors' Act— *What Passes—Schedule—Case at Bar.*—Under the insolvent debtors' act in force in 1838, all property owned by the debtor at the time he took the oath of insolvency, whether mentioned in his schedule or not, and whether fraudulently conveyed or still retained by him, vested in the sheriff. But the evidence in the case at bar does not show that the sheriff ever set up any claim to the land in controversy, or that he ever sold or conveyed one foot of it, and the instruction objected to does not tell the jury what property vested in the sheriff under the insolvent debtors' oath, but only what the sheriff conveyed to the party under whom the defendants claim title.

8. Instructions Not Made Part of Record—*Presumption.*—An instruction not made a part of the record is presumed to have stated the law correctly.

9. Trials—*Argument of Counsel—Effect of Transgressing Proper Bounds—Case at Bar—Harmless Error.*—It is the duty of counsel, in argument, to confine themselves to the case at bar, the evidence properly before the jury, and the law as laid down by the court in its instructions, and an unwarranted departure from this course may make it necessary to set aside the verdict. But in the case at bar the remarks of counsel in the closing argument, as to the result of a former trial of the case, were not, in view of the instructions of the court on the subject, prejudicial to the plaintiffs in error.

10. Ejectment—*Deeds—Fraud—Bona Fides—Question for Jury—Verdicts.*— Whether a deed made in 1838, which forms a part of the chain of title of a plaintiff in ejectment, was *bona fide,* or made with intent to defraud creditors of the grantor, is peculiarly a question for the jury, whose verdict will not be lightly disturbed.

Error to a judgment of the Circuit Court of Orange county rendered May 5, 1896, in an action of ejectment wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

*Affirmed.*

The plaintiff in the court below claimed that the land in controversy formerly belonged to John Edwards; that John Edwards, by deed dated May 15, 1838, conveyed a tract of 205 acres of land, which included the land in controversy, to Wm. M. Chapman for the support of his imbecile daughter, Hannah Mary Edwards; that shortly thereafter the said John Edwards died, his daughter Hannah Mary surviving; that Hannah Mary died, surviving her, as her sole heir, a sister, Lucy Anne, who intermarried with Wm. P. Mallory; that the plaintiff was the only child of Lucy Anne Mallory; that Lucy Anne died surviving her, the plaintiff, and her husband Wm. P. Mallory, who was entitled to a life estate in the land, as tenant by the curtesy, and that the said Wm. P. Mallory died in 1883. This action was brought in 1892.

The title of the defendants in the court below—the plaintiffs in error—and their line of defence is set forth in the petition for a writ of error, as follows:

"The defendants, Hair and wife, claiming under deed of January 4, 1888, from Wm. G. Taylor and wife were in possession of a tract of 425 acres of land in Orange county, of which the plaintiff Mallory claimed 118 acres 3 roods and 35 poles in the action of ejectment. This tract of 425 acres had been conveyed to Robina Taylor by Wm. G. Taylor by deed of February 28, 1885, and by deed dated May 20, 1882, to said Wm. G. Taylor by Wm. G. Williams, trustee in a deed of trust executed March 21, 1871, by Ferdinand Jones and wife. The deed from the trustee, Judge Williams, recited that Taylor had bought the land in 1873 for $8,000, and that by decree of the Circuit Court of Orange in *Colman* v. *Bell Jones, etc.*, said trustee was directed as soon as the purchase-money was paid by Taylor to make the deed to him. Said tract of 425 acres had been conveyed to W. G. Williams and P. B. Jones, trustees, March 21, 1871, by Ferdinand Jones and wife.

"The land alleged to be in controversy, 118 acres 3 roods 35 poles, is a part of said 425 acres, and was conveyed to

Ferdinand Jones by Wm. P. Mallory by deed of March 7, 1854.

" This tract of 118 acres 3 roods and 35 poles was a part of 215 acres conveyed to said Wm. B. Mallory by Joseph Edwards by deed dated August 22, 1842, said deed reciting that it was ' the same tract of land devised .by Wm. Edwards, father of said Joseph Edwards, to his son, John Edwards, and which land was sold publicly at Orange Courthouse by the sheriff of Orange, being surrendered by John Edwards in his schedule, as an insolvent debtor, in discharge of certain claims in the hands of the sheriff against said John Edwards,' etc.

" The deed from Row, sheriff, to Joseph Edwards, referred to in the foregoing deed, is dated May 2, 1840, and recites the sale by Row at public auction, according to the forms of law in such case made and provided of the schedule of John Edwards, subscribed and delivered by him under the provisions of the laws for the relief of insolvent debtors, and the said John Edwards being in custody," etc., and the purchase of said property by Joseph Edwards for eight hundred and fifty dollars.

" The schedule referred to is as follows :

" ' The following is the schedule of my whole estate.  I have no property of any description, real, personal, or mixed, or if I have any, I am willing to surrender it, possibly I may have an interest in the property conveyed by indenture of trust bearing date this day executed by me to John M. Chapman, for the benefit of Richard M. Chapman, if any, it is hereby surrendered.'  Signed ' John Edwards.'  On the same day, Justice of the Peace Richard Cave ordered the discharge of John Edwards from custody, ' the said John Edwards having complied with the directions of the act of the General Assembly for the relief of insolvent debtors,' etc. The deed of trust referred to in John Edwards' schedule was a deed from him to John Chapman, conveying the tract of 205 acres of land upon trust to secure two debts to Richard M. Chapman, and is of the same date with the schedule of John Edwards, June 9, 1838.

" Appellants had possession and a chain of title in uninterrupted succession from June 9, 1838, as follows:

" John Edwards to Row, sheriff, June 9, 1838. Row, sheriff, to Joseph Edwards, May 2, 1840.

" Joseph Edwards to Wm. P. Mallory (the father of appellee, David C. Mallory), August 22, 1842; Wm. P. Mallory to Ferdinand Jones, March 7, 1854.

" Ferdinand Jones to William G. Williams, trustee, March 21, 1871; William G. Williams, trustee, to William G. Taylor, May 20, 1882; William G. Taylor to Robina Taylor his wife, February 28, 1885.

" Robina Taylor and Wm. G. Taylor to Wm. Hair and wife, January 4, 1888.

" The uncontradicted evidence of Mrs. Mallory shows that Wm. P. Mallory was in adverse possession of this property from a short time after his first marriage in 1842 until he conveyed to Jones in 1854. Wm. P. Mallory was married to Lilly Anne Mallory July 27, 1842, and the land in controversy was conveyed to him by his wife's uncle, Joseph Edwards, August 22, 1842.

" Appellee, David C. Mallory, the son of William P. Mallory and the grandson of Joseph Edwards, by the deposition of one of his witnesses, is shown to be now 54 years of age. He was forty years of age when his father died, and was then living with his father. It is presumed that his father could have at least given him some information as to when his wife, David Mallory's mother, died, and when his wife's sister, Hannah Mary Edwards, died. David Mallory says: ' My father died in 1883; I never said anything to my father about my claim to this land in his lifetime, though I had heard it would be my land after his death. I don't know, only I never mentioned it to him; I just never did. I did once mention it to my step-mother, but she told me it was not so. Ferdinand Jones was in possession of the land in controversy when I can first remember. I am now in possession of that portion of the John Edwards land which my father did not sell to Ferdinand

Jones.' Remarkable condition of affairs, if true! Here was a man living with his father who had heard that an adjoining tract, then in the occupancy of a stranger, was his land upon his father's death, and yet never mentioned it to his father or heard his father say anything about it. He saw Ferdinand Jones become involved and convey that property to trustees; saw the property advertised and sold; saw the purchaser put in possession and a deed made to the land, the purchase-money having been all paid in some years after the purchase, and not until years afterwards does he institute his suit. The conduct of David Mallory is not consistent with the supposition that he could have believed that he had a valid claim.

" Upon what is his claim based? Appellant's uninterrupted chain of title, accompanied with the adverse possession, runs back for more than fifty years. There is no question but that their action was *bona fide*, and above board. They paid full value, and believed they were purchasing a good title. Mallory, by a word, could have warned Mr. Taylor not to pay for this property, but nothing of the kind was done.

" What then is Mallory's claim to this land and against purchasers under an unbroken possession and chain of title of record for more than fifty years?

" His claim is that prior to the surrender of the property under the insolvent debtors' law on June 9, 1838, to-wit—by deed of May 15, 1838, and recorded May 28, 1838—John Edwards conveyed by deed of gift the 205 acres to William M. Chapman, trustee, for the support of Hannah Mary Edwards, an imbecile child of John Edwards, and David Mallory's aunt; that John Edwards shortly thereafter died; that then Hannah Mary Edwards died, and that David Mallory's mother, Lucy Anne Mallory (*née* Edwards), and a sister to Hannah Mary, inherited the property, and dying left her husband, William P. Mallory, a life estate therein, and that his (David Mallory's) right did not accrue until the death of William P. Mallory, his father, in 1883. It is insisted that the facts for the basis of this claim were not proved; but on the motion to set aside the

verdict, we assume that they were proved. It is insisted that nothwithstanding Mallory may have proved the correct chronological order of the deaths of grandfather, aunt, and mother, he cannot recover. The deed under which he claims is voluntary and void as to existing creditors. V. C. 1819, vol. 1, page 372; *Shirley* v. *Long*, 6 Randolph, 735.

"John Edwards, at the date of the conveyance, was absolutely insolvent. The fact that he undertook to convey the whole of his land for the support of his daughter, indicates it. Prior to this date judgments had been obtained and executions issued against John Edwards. The names of three of the judgment creditors are given, *Balland* v. *Edwards*, *Balland & Bradley* v. *Edwards*, and *Robinson & Co.* v. *Edwards*. In addition to these judgment creditors two debts are mentioned in the trust-deed of June 9, 1838. A copy of the execution in *Balland* v. *Edwards* is dated May 10, 1838, five days before the deed for the benefit of Hannah Mary Edwards, and is endorsed by the sheriff 'Not executed in consequence of executing a *ca. sa.* in the same case.'

"Under that *ca. sa.* John Edwards was taken, and solemnly declared himself insolvent, and surrendered all of his interest to the sheriff, and was discharged. It conclusively appears from the record, therefore, that John Edwards was hopelessly insolvent when he executed the deed of May 15, 1838, for the benefit of Hannah Mary Edwards. That deed was then an absolute nullity, and so regarded by all the parties in interest, for on the 9th of June, 1838, John Edwards conveyed the same property to secure two of his debts. With judgments and executions against him and unsecured debts John Edwards soon realized, perhaps was informed, that his deed for benefit of his daughter was a nullity, and it was subsequently so treated."

There was a verdict and judgment for the plaintiff, and the defendants applied for and obtained a writ of error.

*Rixey & Barbour*, for the plaintiffs in error.

*J. C. Gibson* and *J. W. Morton,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

Bill of exception No. 1 is to the action of the court in admitting certain documentary evidence. The petition for a writ of error makes no allusion to this exception, no ground of objection to the court's action has been pointed out or suggested, and this court perceiving none, the exception must be treated as not well taken.

Bill of exception No. 2 is to the action of the court in admitting the testimony of Joseph Bell to prove what was said on a former trial by a witness who had since died. This exception is not made the subject of assignment as error in the petition, and need not be considered now further than to say that inasmuch as the fact sought to be proved by Bell, was fully proved by other witnesses, the introduction of his evidence, if error, was harmless.

Bill of exceptions No. 3 is to the action of the court in allowing the depositions of Aggie Campbell and Ophelia Taliaferro to be read to the jury. These depositions were taken *de bene esse* in a former trial, and with them was produced an agreement in writing signed by counsel in regard to their use as evidence in this case, which we think warranted the court in allowing them to be read.

Bill of exception No. 4 is to the action of the court in allowing the deposition of John Roach to be read. Without passing upon the objection the court adjourned over until the following day to give opportunity, if possible, to secure the attendance of the witness. Upon its reassembling, counsel informed the court that he had a telegram from the sergeant of the city of Richmond to whom a summons had been sent, saying the witness was too sick to come, thereupon the deposition was admitted. The sheriff's telegram was followed on the same day by a formal return with a certificate from the

surgeon of Lee Camp, saying the witness was a patient in the Soldiers' Home, and physically unable to travel. The certificate and return of the sheriff were produced in argument, having been omitted from the record, and therefore cannot properly be considered. We think the record discloses no error in the ruling of the court on this point.

Bill of exception No. 5 is to the action of the court in giving certain instructions offered on behalf of the defendant in error.

By deed dated May 15, 1838, recorded May 26, 1838, John Edwards conveyed to William M. Chapman, trustee, a tract of land containing 205 acres, of which the tract in controversy is a part, for the use and benefit of his daughter Hannah Mary Edwards during her life, and at her death to go to her legal heirs. Under and by virtue of this deed the plaintiff, David C. Mallory, claims the land in controversy. On the 9th day of June, 1838, John Edwards conveyed this same tract of land, together with eight slaves, his household and kitchen furniture, stock of horses, cattle, sheep, hogs, plantation utensils, and all growing crops of wheat, corn and oats to John M. Chapman in trust to secure Richard Chapman two debts, one for $42.72 and the other for $110; and on the same day he took the insolvent debtor's oath, filing therewith the following schedule of his estate: "I have no property of any description, real, personal, or mixed, or if I have any, I am willing to surrender it, possibly I may have an interest in the property conveyed by indenture of trust bearing date this day executed by me to John M. Chapman, for the benefit of Richard M. Chapman, if any, it is hereby surrendered."

On the 2d day of May, 1840, Thomas Row, late sheriff of Orange county, conveyed to Joseph Edwards all the right, title, and interest acquired by him in his official capacity under this insolvent debtor's schedule filed by John Edwards, setting forth in the deed that he had proceeded on July 23, 1838, in front of the court-house of Orange county to sell according to the forms of law, the said schedule of John Edwards, and all

interest of said Edwards in the trust deed to John M. Chapman for the benefit of Richard Chapman, he the said John Edwards being in custody, at the date of the deed to secure Richard Chapman, at the suit of two creditors for the sum of $850, and that Joseph Edwards had become the purchaser at the price of $850.

It is through Joseph Edwards, the purchaser at this sale and the grantee in the deed from Row, sheriff, that the plaintiff in error, through several successive alienations, traces his title to the land in controversy.

It is clear that the deed of May 15, 1838, from John Edwards to William M. Chapman, trustee, for the benefit of his daughter Hannah Mary Edwards for life, and at her death to her legal heirs, could not be affected by any subsequent act of the grantor. If the deed was upon good consideration and made in good faith, and not to delay, hinder, and defraud the creditors of John Edwards, then his subsequent conveyance of the property to John M. Chapman for the benefit of creditors, or his subsequent insolvent debtor's oath could not prejudice Hannah Mary Edwards or her legal heirs. The deed was upon a good consideration, and there is evidence tending to show that at the time it was made John Edwards had and reserved ample property to pay all of his just debts, and if he did reserve ample property for that purpose, then the deed was *bona fide*, and not made to hinder, delay, or defraud his creditors. This was a question to be settled by the jury, and it was submitted to their determination by the following instruction, which is free from objection :

" The court instructs the jury that the deed of the      day of          , 1838, from John Edwards to W. M. Chapman, for the benefit of Hannah Mary Edwards, is not *per se* fraudulent and void on the face thereof as being voluntary, and that whether it was excuted to hinder, delay and defraud creditors is a question for the jury, but as to the creditors in existence at the time, it is *prima facie* fraudulent and void.  But that if the

grantor in said deed retained ample and sufficient property to pay all his just and lawful debts, the jury would have a right to believe that such deed was not executed with fraudulent intent. Burden is upon said plaintiff and those claiming under him as against these existing creditors or those claiming under them to show that such was the case."

It was necessary for the plaintiff to show that he acquired title to the land under and by virtue of the deed to Chapman for the benefit of Hannah Mary Edwards and her legal heirs. The evidence tends to prove that John Edwards had but two children, Hannah Mary Edwards, an imbecile, and Lucy Anne Edwards, who intermarried with William P. Mallory, gave birth to the plaintiff, David C. Mallory, and shortly thereafter died; and tended further to show that Hannah Mary survived her father, and that Lucy Anne Mallory survived her sister, leaving the plaintiff her only child, and that William P. Mallory, her husband, lived until the year 1883. Whether or not the evidence established that the plaintiff was the person entitled to the land under the terms of the Hannah Mary Edwards deed was a question for the jury.

The defendants relied upon the statute of limitations as a bar to the plaintiff's claim, which was also a question for the jury.

Both these questions were submitted to the jury by the following instruction, which is also free from objection:

"If the jury believe from the evidence that Hannah Mary Edwards and Lucy Anne, the wife of said William P. Mallory, were the only children of John Edwards, and that Hannah Mary survived her father, and Lucy Anne survived Hannah Mary, then the said Lucy Anne, as heir-at-law of said Hannah Mary, became entitled to whatever interest in the said land the said Hannah Mary had at the time of her death; and if they further believe from the evidence that the plaintiff is the only child of said Lucy Anne, he was at her death her heir-at-law and became entitled to her interest in said land, as such, subject to

his father's life estate in the same; and if they believe from the evidence that his father died in 1883, then the right of action of said plaintiff did not accrue till that date, and the statute of limitations is not a bar upon this state of facts unless they should believe that previous to the death of the said Hannah Mary, the said William P. Mallory was in possession holding adversely to the right of the said Hannah Mary."

The plaintiff in error objects to the following instruction given for the plaintiff:

"The court instructs the jury that the deed of 1840 from Row, sheriff, to Joseph Edwards only conveyed the property surrendered by John Edwards in his schedule, and that the deed from Joseph Edwards to William P. Mallory, making reference to the will of William Edwards, probated in 1822, and to the *ca. sa.* proceeding against John Edwards, was notice of such proceedings."

It is contended that the law vested in the sheriff all of John Edwards' property, whether mentioned in his schedule or not, and whether fraudulently conveyed or still retained, and that it was error to tell the jury that the deed from Row, sheriff, only conveyed the property surrendered by John Edwards in his schedule.

It is true that the law vested in the sheriff all the estate owned by the insolvent debtor at the time the oath was taken, as well that left out of the schedule as that included in it, and also the right to claim on behalf of the creditors any estate fraudulently conveyed by the insolvent to the prejudice of the creditors. *Shirley* v. *Long,* 6 Rand. 825.

It must be observed, however, that the court was not asked to tell the jury what property vested in the sheriff under the insolvent debtor's oath, but was only asked to say what property had been conveyed by the sheriff under his deed to Joseph Edwards, and in doing so the instruction states what the sheriff himself states on the face of his deed, which was the only source of information on that subject.

It must be further observed that there is not one word of evidence tending to show that the sheriff ever set up any claim whatsoever to this land; nor is there one word to show that he ever sold or conveyed one foot of it. His deed to Joseph Edwards is silent on the subject, and does not purport to convey anything but such right, title, and interest as he might have under the schedule, and the Chapman deed of trust, referred to in the schedule, without designating by name an item that came to his hands or was sold by him. The Chapman deed of trust purported to convey a large amount of personal property—eight slaves, a stock of horses, cattle, sheep, hogs, crops, &c., and the price obtained. at the sheriff's sale, $850, would at least suggest that the land had not been included in the sale. Certainly it cannot be presumed that such was the case without one word of evidence to that effect.

The remaining three instructions given for the plaintiff need not be discussed in detail; they embody the same propositions, in somewhat different form, submitted to the jury by the instructions already referred to, and contain nothing prejudicial to the rights of the plaintiffs in error.

The sixth bill of exceptions is to the action of the court in refusing to give certain instructions on behalf of the plaintiffs in error. Thirteen instructions were asked for. The first was given in a modified form, the sixth and ninth were refused, and the rest were all given as asked. The modified form of the first instruction is not in the record, and we must therefore presume that it correctly stated the law. The sixth and ninth instructions, which were refused, were as follows:

## VI.

" The court instructs the jury that the deed from John Edwards to William M. Chapman, trustee for Hannah Mary Edwards, was *prima facie* void as to existing creditors; and if the parties to the deed stood by, and without effort to stop the sale of the said property conveyed in the said deed sold by the

sheriff under John Edwards in insolvency for debts existing at the date of the said deed, then the deed from the sheriff to the purchaser, Joseph Edwards, conveyed a better title than the parties had under the said deed to William M. Chapman, trustee for Hannah Mary Edwards; and if the jury believe that the defendants derive their title and possession by deeds in an unbroken chain from said Joseph Edwards, they will find for the defendants."

## IX.

" The court instructs the jury that though they may believe from the evidence that John Edwards retained sufficient property to pay his existing debts at the time of his conveyance to William M. Chapman, trustee for Hannah Mary Edwards, still if they believe from the evidence that the sheriff of Orange county advertised and sold the property conveyed in said deed to William M. Chapman, trustee, and conveyed the same to the purchaser, John Edwards, by deed, then said Joseph Edwards took a superior title to that to William M. Chapman, trustee for Hannah Mary Edwards, under deed of May 15, 1838."

It is sufficient to say that these two instructions announce unsound principles of law, were not applicable to the case, and were therefore properly refused.

The sheriff and all parties claiming through him had notice of the deed of record conveying the land for the benefit of Hannah Mary Edwards and her legal heirs, and it must be conceded that unless this deed was fraudulent as to the creditors, the sheriff could set up no claim to the land conveyed therein. The question then arises, to be determined by the jury upon the very threshold of their deliberations, was the deed for the benefit of Hannah Mary Edwards fraudulent as to creditors; if it was, the sheriff took the land conveyed by it; if it was not, he acquired no rights in said land.

The jury found for the plaintiff. This they could not have done unless they believed from the evidence that the deed from

John Edwards to Chapman, trustee for the benefit of Hannah Mary Edwards and her legal heirs, was *bona fide*, and not made to hinder, delay or defraud his creditors. Nor could they have found for the plaintiff unless they believed from the evidence that he had shown himself to be the person to whom the land belonged under the terms of said deed. Nor unless they further believed from the evidence that right of action did not accrue to the plaintiff until 1883, in which event his right was not barred by the statute of limitations.

If these facts were established to the satisfaction of the jury, everything else contended for by the plaintiffs in error might be admitted, and it could not alter or affect the result, for, as already seen, if the Hannah Mary Edwards deed was *bona fide* it was not affected by the subsequent acts of John Edwards; the land it conveyed never vested in the sheriff, and therefore could not have been sold or conveyed by him.

The seventh bill of exception is to the action of the court in permitting counsel for the plaintiff, in the course of his closing argument, to make statements about the result of a former trial of the case, and other remarks, claimed not to be justified, and prejudicial to the plaintiff in error.

The lower court, in response to an objection on this score, instructed the jury that "they must decide the case upon the evidence, oral and written, as introduced before them at the bar, and the law as propounded to them by the court, discarding all statement of facts made by counsel on either side and not introduced in evidence." It is the duty of counsel, in argument, to confine themselves to the case at bar, the evidence properly before the jury, and the law as laid down by the court in its instructions, and an unwarranted departure from this duty might make it necessary to set aside the verdict. In the case at bar, however, we do not perceive that the remarks complained of could have prejudiced the plaintiff in error, especially in view of the court's instruction on the subject to the jury.

The next and last bill of exception is to the action of the court in refusing to set aside the verdict of the jury and grant a new trial.

As to the identity of the plaintiff as the rightful owner under the Hannah Mary Edwards deed, and the question of the bar of the statute, the evidence was ample to sustain the plaintiff's case; but upon the crucial question of the *bona fides* of the Hannah Mary Edwards deed, turning upon whether the grantor had, at the time it was made, reserved property enough to pay his debts, the evidence on account of the great lapse of time, was necessarily meagre, and therefore unsatisfactory. The jury was, however, a most appropriate tribunal to settle the question raised, and we would not be justified in holding that the learned judge who conducted the trial erred in declining to interfere with the result of their deliberations.

For these reasons the judgment of the Circuit Court must be affirmed.

*Affirmed.*