# Richmond.

WORRELL & WILLIAMS v. KINNEAR MANUFACTURING Co.

March 9, 1905.

Absent, Cardwell, J.

1. DAMAGES—*Contract to Manufacture and Deliver—Breach by Vendee—"Fixed Charges."*—The measure of damages for an unqualified annulment, without reasonable cause, by the vendee in an executory contract for the sale of an article not manufactured at the time of breach is the difference between the contract price and the costs of manufacturing and delivering the article, but in estimating such cost, a due proportion of "fixed charges," that is, the general running expenses which attach to every business, are to be taken into consideration.

2. MANUFACTURE OF GOODS—*Costs—Fixed Charges—How Ascertained—Evidence.*—A defendant who has violated his contract with the plaintiff, without cause, will not be permitted, under the guise of determining "fixed charges," to unduly pry into the private business methods of the plaintiff, and expose them to the scrutiny of a vigilant competitor, who is alleged to be back of the breach, when such charges are susceptible of approximate ascertainment without unnecessary exposure of the plaintiff's trade secrets. Such charges may be shown by the opinion of practical men having experience in such business.

3. EVIDENCE—*Cross-Examination of Witness—Discretion.*—The latitude permissible in the cross-examination of a witness is left largely to the sound discretion of the trial court whose ruling will not be reversed by an appellate court unless that discretion has been plainly abused.

4. EVIDENCE—*Impeachment of Witness—Foundation—Case at Bar.*—A witness having stated that the cost of steel to his company, under *continuing contracts,* was three cents per pound, was asked, on cross-examination, with whom his company had said contracts,

which question was objected to, and the witness declined to an--
swer, "for the protection of those from whom he bought." The
cross-examiner, on enquiry from the court, stating that he would
not undertake "to show that the witness did not have any such
contracts," the trial court was right in sustaining the objection to·
the question, as its only legitimate object was to lay the foundation
for impeaching the witness.

5. MANUFACTURE OF GOODS—*Profits—Sub-Contracts.*—The vendor of ma-
terial to be used in the manufacture of an article which one has·
contracted to make for another is not a sub-contractor within the·
meaning of the rule excluding "sub-contracts" in calculating profits·
on a contract.

6. CONTRACTS—*Puffing—Dealer's Talk.*—Statements by a manufacturer·
that his "bid for the work is as low as the work can be done for,.
and that there is no profit in it at that price," are mere expressions.
of opinion, "dealer's talk," and not such, as if proved and are·
untrue, will invalidate the contract.

7. TRIAL—*Rejecting Evidence—When Harmless.*—When evidence is re-
jected under specifications of grounds of defense, but is received²
under the general issue, the defendant is not prejudiced thereby.

8. PLEADING—*Foreign Corporations—Failure to Comply With Code, Sec-
tion 1104—How Pleaded.*—In an action for breach of contract, if the·
defendant relies upon the fact that the plaintiff is a foreign cor-
poration and has not complied with the provisions of section 1104
of the Code, relating to such companies, the defense (plea or state--
ment) is fatally defective if it does not specify the particular in
which it has failed to comply with the statute.

9. NEW TRIAL—*Failure to Receive Evidence—When Harmless.*—A new
trial will not be granted for refusal to permit certain evidence to·
be introduced when substantially the same evidence was received,
without objection, at a later stage of the trial.

10. APPEAL & ERROR—*Excessive Verdict—Putting Upon Terms.*—Where·
the only error disclosed by the record in this court is that the ver-
dict of the jury is excessive, but the amount of the excess is·
apparent, this court will reverse the judgment of the trial court:
and remand the cause, with direction to the trial court to put the
successful party upon terms to release the excess, or else submit
to a new trial; and, if release is made, to overrule the motion for a.
new trial and render judgment for the correct amount, with in-
terest and costs.

Error to a judgment of the Law and Equity Court of the city
of Norfolk, in an action of assumpsit, wherein the defendant in:

error was the plaintiff, and the plaintiffs in error were the defendants.

*Reversed.*

The opinion states the case.

*John B. Jenkins* and *Green, Withers & Green,* for the plaintiffs in error.

*Jeffries & Lawless,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

On June 8, 1903, the defendant in error, by a written contract, obligated itself to manufacture and erect for the plaintiff in error seventy-three galvanized steel shutter doors, to be used in the union warehouses and slip of the Southern Railway Company and the Atlantic Coast Line Railway, at that time in process of erection in the city of Norfolk, at the price of $5,553.90.

On the following day the plaintiff in error despatched a telegram to the defendant in error, withdrawing its acceptance of the offer by which the contract in question had been consummated; and immediately awarded the contract to the Wilson Manufacturing Company for fifty odd dollars less than the price stipulated for in the original agreement. The sole reason assigned by the plaintiff in error for the violation of its contract was that it was to its interest to cancel it.

Thereupon this action was instituted in the Court of Law and Chancery for the city of Norfolk to recover damages for the breach of contract, and resulted in a verdict and judgment for the plaintiff for $1,647.14. To review that judgment, the defendant brings this writ of error here.

A bill of particulars was filed with the declaration in the

case, furnishing plaintiffs' estimate of the material necessary to have completed the contract, with the cost of such material, and also the cost of labor for preparing material and manufacturing and erecting the doors, pursuant to contract, to which was added the freight charges and drayage for their transportation from the factory at Columbus to Norfolk. These several items amounted in the aggregate to $3,326.22.

It is settled law that the measure of damages for an unqualified annulment, without reasonable cause, by the vendee in an executory contract for the sale of an article not manufactured at the time of the breach, is the difference between the cost of manufacturing and delivering the article and the contract price. *Masterdon* v. *Mayor of City of Brooklyn,* 42 Am. Dec. (N. Y.) 38; *Morrison* v. *Lovejoy,* 6 Minn. 319; *Kelso* v. *Marshall,* 24 N. Y. App. Div. 128, 48 N. Y. Supp. 728; *Deyfoos* v. *Uhl,* 69 N. Y. App. Div. 118, 74 N. Y. Supp. 532; *Todd* v. *Gornale,* 148 N. Y. 382, 42 N. E. 982, 52 L. R. A. 225; *Indiana Canning Co.* v. *Priest,* 16 Ind. App. 445, 45 N. E. 618; *Beardsley* v. *Smith,* 61 Ill. App. 340; *Kingman* v. *Hanna Wagon Co.,* 74 Ill. App. 22; *Rice Co.* v. *Penn Plate Co.,* 88 Ill. App. 407; *Kimball* v. *Deere, Wills & Co.,* 108 Ia. 676, 77 N. W. 1041; *Hauser, &c. Co.* v. *Tate,* 105 Ky. 701, 49 S. W. 475; *Berthold* v. *St. Louis El. C. Co.,* 165 Mo. 280, 65 S. W. 748.

The fact that there has been an entire breach of contract in this instance is not denied, and the general doctrine stated above, as to the measure of damages in this class of cases, is also conceded. But the defendant maintains that the plaintiff has altogether omitted the constituent element of "fixed charges" from its computation of the cost of the manufactured product; by which omission, it is insisted, the net profit demanded is materially enhanced.

By the term "fixed charges" is meant the general running

expenses which attach to every business, and it is true, as contended, that such "fixed charges" do compose an essential element in the cost of a manufactured article.

The ruling of the trial court refusing to allow certain questions to be propounded to the president of the plaintiff company, for the alleged purpose of ascertaining the proportion of the "fixed charges" of the business proper to be taken into account in determining the plaintiff's profit, constitutes the first assignment of error.

As the rulings of the court with respect to the II. and IV. assignments of error are germane to the I. assignment, they may be conveniently treated together.

In order to reach an intelligent conclusion in regard to the refusal of the court to permit the defendant's counsel to pursue the line of investigation indicated, it is material to know the circumstances under which the proposed examination arose.

It appears that the Wilson Manufacturing Company, to which company, as remarked, the second contract for the manufacture of the doors in question was awarded, after the original contract had been breached, was an active, and, indeed, the sole competitor in the United States of the plaintiff in the manufacture of that class of doors, and that a suit was then pending between these rival companies for an alleged infringement of a patent upon these doors; that the vice-president and factory manager of the Wilson Manufacturing Company was present during the trial as chief witness for the defendant; and it was openly charged by the president of the plaintiff company while on the witness stand that his business rival "is at the back of this suit," and "is here to get all the information he can as to the methods of our manufacture, and I do not propose to give it." This statement thus directly made was not denied by the party referred to, and the circumstances strongly tended to sustain the charge.

Under these conditions, the trial court declined to permit the witness to be subjected to an examination, the general character of which may be gathered from the following interrogatories:

"What amount of business was done by your house last year?"

"What is the average of your business *per annum?*"

"What was spent for advertising by your concern last year?"

"What is the average expense for advertising your business?"

"What did you spend for salesmen last year?"

"What were the salaries of your officers last year?"

"What was spent for freight?"

"How many officers are in your company and what salaries do they receive?"

From the necessity of the case, the latitude permissible in cross-examining a witness must be left largely to the sound discretion of the trial court; and the rule is well established that an appellate court will not interfere, unless that discretion has been plainly abused. *Burke* v. *Shaver*, 92 Va. 345, 23 S. E. 749; *Savage* v. *Bowen*, ante p. 540, 49 S. E. 668. See also authorities cited in 8 Enc. Pl. & Pr., 110 n. 1.

In order to warrant a reversal on that ground, it must plainly appear that the ruling has resulted to the prejudice of the exceptor. *Morotock Ins. Co.* v. *Fostoria Novelty Co.*, 94 Va. 361, 26 S. E. 850.

That the trial court properly exercised its discretion in refusing to allow the witness to be subjected to the inquisitorial examination proposed, in the light of the surrounding circumstances, cannot be doubted. Plaintiff was the owner of an extensive manufacturing establishment, engaged in various kinds of work, and manufacturing a variety of articles on a large scale, with the buildings, machinery, capital, officers and employees incident to a business of that magnitude. The entire "fixed charges" of such a business would necessarily have af-

forded unsatisfactory data to a jury, from which to estimate
the proportional part of such "fixed charges" proper to be
borne in the manufacture of an isolated article. Beside, it is
contrary to the policy of the law to permit a person, who, with-
out cause, has violated his contract and been sued for the
breach, under the guise of determining "fixed charges," to un-
duly pry into and expose the private business methods of the
injured party to the scrutiny of a vigilant competitor.

"Fixed charges," as remarked, constitute an element of the
cost of manufacture, and were the subject of proper inquiry
in this case, but as shall be seen presently they were susceptible
of approximate ascertainment without unnecessary exposure of
the plaintiff's trade secrets. To entertain a suitor only on the
terms of such business disclosures would tend to deter one who
had suffered wrong from resorting to the courts for redress.

In this connection the witness, who, in response to a question,
had stated that the cost of steel to his company, under *continu-
ing contracts,* was three cents per pound, was also asked on
cross-examination, with whom his company had said continuing
contracts, to which question he made the following reply: "I
decline to answer. I will make oath that the costs embodied in
the bill of particulars are absolutely true, . . . but for
the protection of those from whom we have bought, I decline
to answer." Thereupon, counsel for the plaintiff objected to
the question, and counsel for the defendant insisted upon the
question being answered, stating that his purpose was to test
the credibility of the witness, and he intended to show that steel
could not be bought at that price. In response to the court's
inquiry, if he intended to impeach the witness by showing that
his company did not have the continuing contracts claimed,
counsel stated "that he could not say that he would attempt to
show that the witness did not have any such contracts." The
court then sustained the objection to the question, and declined
to require the witness to answer it.

.The only legitimate object of such a question would have been to lay the foundation for impeaching the witness, and counsel having disclaimed that purpose, the action of the court in ruling out the question was obviously proper.     .

It is further suggested in the IV. assignment of error that the plaintiff's estimate of the actual cost of material is based upon sub-contracts for material, which, it is said, is not a correct criterion in calculating profits. But the doctrine invoked has no application to the purchase of material out of which an article contracted for is to be manufactured. The reason of the rule for excluding the supposed advantages of a sub-contract in computing profits is that it introduces a collateral undertaking, uncertain and contingent in its character, to which the person sought to be affected was not a party, and which was not in contemplation of the parties when the original contract was entered into. *Devlin* v. *Mayor, &c.,* 63 N. Y. 8. But the vendor of material to be used in the manufacture of an article is not a sub-contractor within the meaning of the rule.

In support of the assignment of error, No. III., two averments are made:

(1) That the defendant was induced to enter into the contract by reason of the false and fraudulent representations of the agent of the plaintiff, that its bid for the work was as low as the work could be done, and that there was no profit in it at that price; and,

(2) That the plaintiff had not complied with the provisions of section 1104 of the Code, prescribing the conditions upon which corporations of other States or countries may conduct operations in this State.

There was an agreement between counsel that the defendant should be permitted to show under the general issue anything which it might be lawful to set up and prove under special pleas, provided such matters were embraced in its specifications of de-

fenses, and contained a statement of facts which, if true, would amount to a valid defense to the action. The above grounds were embraced in the statement of defenses filed, but, on motion of the plaintiff, were rejected by the court.

With respect to the first ground of defense, the alleged false representations were mere expressions of opinion, "dealer's talk," and were not such as, if proved, would have invalidated the contract. 1 Benj. on Sales, 561. Besides, it appears that notwithstanding the rejection of that specification of defense, the court allowed evidence of the alleged false representations to be introduced under the general issue, and the question was in that way submitted to the jury; so that the defendant could not have been prejudiced by the court's ruling upon that issue. *Taylor* v. *Mallory*, 96 Va. 18, 30 S. E. 472; *Norfolk, &c. Ry. Co.* v. *Marpole*, 97 Va. 594, 34 S. E. 462.

The second ground of defense—that the plaintiff was a foreign corporation, doing business in the State without having complied with section 1104 of the Code—was defective in not specifying the particular in which it had failed to comply with the requirements of the statute, and for that cause, if for none other, was properly rejected. *Nat'l Bldg., &c. Ass'n* v. *Ashworth*, 91 Va. 706, 22 S. E. 521.

Finally, in regard to the contention that the court erred in excluding testimony tending to show the amount which ought to have been deducted for "fixed charges." The record shows that the court permitted the introduction of admissible evidence on the subject, and also that the jury made some allowance for such charges in arriving at their verdict.

While the vice-president and factory manager of the Wilson Manufacturing Company testifies that from 35 to 40 *per cent.* of the aggregate cost of material and labor was the customary percentage to be deducted for fixed charges, an intelligent and disinterested witness declares 25 *per cent.* to be the usual allowance for such charges, in determining profit.

As to the propriety of basing a recovery upon this character of evidence, in the leading case of *Masterdon* v. *Mayor of City of Brooklyn, supra,* the court said: "The constituent elements of the cost should be ascertained from sound and reliable sources; from practical men, having experience in the particular department of labor to which the contract relates."

It appears, therefore, that the defendant has no ground to complain of the mode adopted for ascertaining "fixed charges" in this instance, and the rule in this State is that "a new trial will not be granted for refusal to permit certain evidence to be introduced when substantially the same evidence was received without objection at a later stage of the trial." *Norfolk, &c. Ry. Co.* v. *Marpole, supra; Taylor* v. *Mallory, supra.*

The evidence on behalf of the plaintiff shows that the
    cost of necessary labor and material to have per-
    formed the contract on its part would have
    amounted to ...............................$3,172 43
25 *per cent.* of that sum is......................    793 10
                                                                  $3,965 53
Freight charges .............................    153 79
                                                                  $4,119 32

Contract price of article delivered...............$5,553 90
Cost of manufacture and delivery..............  4,119 32

   Profit ...................................$1,434 58

Amount of verdict.............................$1,647 14
Profit ......................................  1,434 58

   Excess of verdict over profit...............$   212 56

It thus appears that while it was competent for the jury to have adopted 25 *per cent.* of the aggregate cost of labor and material for "fixed charges," they have, in assessing the damages, exceeded that estimate by the sum of $212.56.

For that reason the judgment of the trial court must be reversed; but, inasmuch as that is the only error which the record discloses, the case will be remanded with directions that unless the plaintiff enter of record its election to release the sum of $212.56, the verdict shall be set aside and a new trial awarded. But if the plaintiff shall accept a recovery of $1,434.58, as the true measure of its damages in the case, then the motion of the defendant for a new trial will be overruled, and judgment rendered for said sum of $1,434.58, with interest and costs.

*Affirmed.*