# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## E. I. DuPont de Nemours & Co. v. Taylor.

### March 27, 1919.

1. MASTER AND SERVANT—*Safe Place to Work—Negligence of Master.*—A master is negligent unless the place at which his servant is put to work is reasonably safe, considering the character of the work and the manner in which it is directed to be done.

2. MASTER AND SERVANT—*Safe Place to Work—Assumption of Risk —Contributory Negligence—Knowledge of Danger—Question of Fact—Case at Bar.*—A servant was put to work transporting guncotton from one point to another in his master's plant. The cotton was hauled along a tramroad, above which there was a line of pipe. The servant while riding backwards, standing on a truck loaded with guncotton, was struck by the pipe line, knocked down and received the injury complained of. This position was taken by the servant so that he could see if a can or any of the men, fell off the trucks, and, if so, reach back and touch the motorman, and notify him to stop at once. In an action by the servant against the master, defendant claimed that the place was reasonably safe, as the plaintiff knew or was chargeable with knowledge of the height of the pipe line; that he assumed the risk; and was, furthermore, guilty of such contributory negligence as barred his recovery.

   *Held:* That in order for the defendant to escape liability it was necessary for it to establish plaintiff's knowledge, actual or imputed, of the danger to which he would be subjected in the discharge of his duties. Such knowledge was the foundation upon which rested not only the defenses of assumption of risk and contributory negligence, but also the defense that the defendant had furnshed the plaintiff a reasonably safe place in which to work; and upon the testimony, it could not be said as a matter of law that the servant knew or was chargeable with knowledge of the danger to which he was exposed. It was a question of fact to be determined by the jury under proper instruction from the court.

3. APPEAL AND ERROR—*Demurrer to Evidence Rule.*—On appeal from a judgment for a servant in an action against his master

for personal injuries, the master stands in the appellate court as on a demurrer to the evidence interposed by it, thereby admitting the truth of all of the plaintiff's parol evidence, and all inferences therefrom favorable to the plaintiff, which a jury might fairly draw, and as waiving all of its own evidence in conflict therewith, and all inferences from the latter, except those which necessarily flow therefrom. ·

4. APPEAL ANE ERROR—*Conclusiveness of Verdict.*—Where in· an action by a servant against his master for personal injuries, the subject of the imputed knowledge of the servant of the danger causing the accident was submitted to the jury under instructions prepared by counsel for the defendant, without objection on the part of the plaintiff, it is concluded by the verdict.

5. APPEAL AND ERROR—*Instructions—Harmless Error.*—In an action by a servant against his master, an instruction for the plaintiff that if "the jury believe from the evidence that the defendant failed to use ordinary care to furnish the plaintiff a reasonably safe place for the performance of the work of his employment and as a direct consequence and result of said failure the plaintiff was injured without fault on his part and without knowledge of or opportunity of knowledge of any danger, then the jury must find for the plaintiff," was objected to by the defendant on the ground that there is no evidence to justify the court in embodying in the instruction the idea that the plaintiff had *no opportunity of knowledge of any danger;* the view of the defendant being that the plaintiff not only had *opportunity* to know of the danger, but that his knowledge of general conditions were such as to impute to him actual knowledge thereof.

*Held:* That if there was any error in this respect, it was harmless, and the jury could not have been misled thereby, as this feature of the case was fully and completely covered by other instructions given at the instance of the defendant.

6. MASTER AND SERVANT—*Negligence—Imputed Knowledge.*—Opportunity for knowledge is not always the equivalent of imputed knowledge. It is only when men of ordinary prudence and observation would have observed under like circumstances that it can be so construed. Mere failure to observe when there is no occasion for observation, is not negligence. It is only negligent ignorance that can be chargeable as the equivalent of knowledge. Knowledge of general conditions will not comprehend a particular danger, where men of ordinary care and prudence, placed in the same circumstances, and using their faculties in the usual way, would not have apprehended such danger. If the failure to observe, however, amounts to negligence, then observation will be imputed.

7. Evidence—*Admissibility—Waiver.* — Plaintiff testified that he was instructed by a foreman to take his men and get on the trucks. Defendant objected to this statement, as it was not shown that the foreman was authorized to give any such instructions.

   *Held:* That the objection, if ever valid, was waived by the defendant proving the same fact by one of its witnesses.

8. New Trials—*Damages—Personal Injuries—Discretion of Jury.*— There has not yet been discovered any standard by which to measure in dollars and cents the value of physical pain and suffering. It is a matter which must be left to the judgment and discretion of an impartial jury, and no mere difference of opinion of the trial judge, however decided, will justify an interference with their verdict, unless it appears from the record that the jury has been influenced by partiality or prejudice, or has been misled by some mistaken view of the merits of the case.

9. Remittitur—*Right of Court.*—There has been much difference of opinion among the courts in the absence of a statute, as to the right of the court to put the plaintiff, in an action of tort, upon terms to accept a verdict for a reduced amount without the consent of the defendant. But the decided weight of authority is to the effect that if the verdict may be set aside as excessive, but it is not so excessive as to evidence passion, prejudice or corruption, the plaintiff may be put upon terms to accept a reduced amount, although there is no measure of the damages, and if he accepts it, the defendant cannot complain. But it is only in such case that the reduction can be made. Such was the law in this State prior to the adoption of the act of 1906. It is not necessary in this State that the losing party should consent to the remitter.

10. Remittitur—*Plaintiff's Right of Appeal—Acts 1906, p. 251— Action of Appellate Court.*—But by the act of 1906 (Acts 1906, p. 251) the plaintiff is no longer deprived of his right of appeal. He does not surrender his right of appeal by accepting a judgment for the reduced amount, provided it is done under protest, but retains his right to insist on the verdict of the jury and to contest the correctness of the judgment of the trial court in reducing it. When the case reaches the Supreme Court of Appeals, it will affirm the judgment, upon the presumption of its correctness, in the absence of evidence to the contrary; but when the evidence is certified, and it appears that the verdict is not so excessive as to warrant the belief that the jury were influenced by partiality, prejudice, or corruption, or have been misled by some mistaken view of the merits of the case, and it also fails to disclose any standard by which the trial court could have meas-

ured the reduction, the Supreme Court of Appeals will uphold the verdict of the jury, because it is the tribunal appointed by law to ascertain the damages sustained.

Error to a judgment of the Circuit Court of Prince George county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed and additional judgment*
*for amount remitted.*

The opinion states the case.

*Plummer & Bohannan,* for the plaintiff in error.

*R. B. Willcox* and *S. M. Brandt,* for the defendant in error.

Burks, J., delivered the opinion of the court.

The plaintiff, A. B. Taylor, a servant of the defendant company, recovered a judgment against the defendant for $8,000 damages, claimed to have been sustained by reason of negligence of the defendant company. To that judgment this writ of error was awarded.

The plaintiff was put to work loading guncotton to be transported from one point to another in the defendant's plant. The cotton was hauled along a tramroad, above which there was a line of pipe. The plaintiff was struck and knocked down, and received the injury complained of. He claims that the place at which he was placed to work was not safe by reason of the fact that the pipe line was too low to admit his safe passage under it while standing on the car on which the cotton was being transported, and that he had no knowledge of this fact and was not informed thereof by the defendant company. The defendant claims

that the place was reasonably safe, as the plaintiff knew or was chargeable with knowledge of the height of the pipe line, that he assumed the risk, and was, furthermore, guilty of such contributory negligence as barred his recovery. Counsel for the company (plaintiff in error) have argued these defenses with their usual ability, and have cited many authorities to sustain their position. The case, however, lies within narrow limits, and the law is not difficult of application. The questions to be determined were: (1) was the company negligent, under the circumstances, in putting Taylor to work without notice of the low overhead pipe line, and (2) was Taylor negligent in standing on the truck and riding backwards, or (3) did he assume the risk? These were questions of fact to be determined by the jury under proper instructions from the court.

[1-3]   It is apparently conceded that the defendant was negligent unless the place at which Taylor was put to work was reasonably safe, "considering the character of the work and the manner in which it was directed to be done," but whether conceded or not we are of opinion that such is the law.   All of the defenses tendered, therefore, were dependent for success upon showing that Taylor knew, or was chargeable with knowledge, of danger from the overhead pipe line, and the evidence was directed to this situation.

The defendant recognized from the beginning that, in order to escape liability, it was necessary for it to establish the plaintiff's knowledge, actual or imputed, of the danger to which he would be subjected in the discharge of his duties.   It was the foundation upon which rested not only the defenses of assumption of risk and contributory negligence, but also the defense that the defendant had furnished the plaintiff a reasonably safe place in which to work.   This is made manifest from the petition for the writ of error.   It begins, in effect, by announcing the following proposition: "As a basis for the consideration of the affirmative defenses

of assumption of the risk and negligence, in detail, it is submitted that the plaintiff knew or was charged with *knowledge of conditions that affected his safety as an employee."* After a very full and able discussion of the evidence and of the law applicable thereto, it closes with this statement: "The same evidence is relied upon to establish the first proposition asserted as a ground for setting aside the verdict of the jury, viz: that the place at which the plaintiff was at work was reasonably safe, considering the character of the work, and the manner in which it was directed to be done."

Of course, if the foundation falls, the superstructure must go with it. The crucial question, therefore, was and is, did the plaintiff know, or was he chargeable with knowledge of the danger to which he was subjected, and which resulted in the injury complained of.

It must be borne in mind that the company stands here as on a demurrer to the evidence interposed by it, thereby admitting the truth of all of the plaintiff's parol evidence, and all inferences therefrom favorable to the plaintiff, which a jury might fairly draw, and as waiving all of its own evidence in conflict therewith, and all inferences from the latter, except those which necessarily flow therefrom. Viewed from this standpoint, the jury might have reasonably found, as facts, the following:

Taylor was a man 38 years old, and was first employed by the defendant as a night policeman, in July, 1915, and continued this work until sometime in September, when he was discharged for going to sleep while on duty. About October 1, 1915, he was again employed by the defendant, this time as labor foreman, and continued in this position until he was injured December 20, 1915. His duties, at first as night policeman and afterwards as labor foreman, carried him over a very large part of the plant. He went wherever he was ordered to go, and this carried him

practically all over the plant, except the portion where he was injured. He testifies that he had never been in this part of the plant before, and was not familiar with it. There were tram roads for transporting different kinds of materials running through many places in the plant. There were, also, overhead pipe lines throughout the plant, and these crossed the tramroads at many points, possibly as high as twenty-five or thirty in the plant in which the plaintiff was injured. Electric motors, pulling low platform trucks, wwere operated over these tramroads. The tramroad on which the plaintiff was hurt, and the pipe line over it were new lines of comparatively recent construction, one witness placing their completion at about two weeks before the accident, and the building to which the plaintiff was to transport guncotton was new and not entirely completed. The cotton was being transported to it for the first time on the day the plaintiff was injured. The plaintiff was put to the work of transporting guncotton from No. 1 purification house to No. 6 purification house, about five or five-thirty o'clock, on December 20, 1915. He was instructed to load the cotton on the trucks, and after it was so loaded, to take his men and get on the trucks and carry the cotton to its destination. The train he was loading consisted of a small electric motor and five trucks. The deck or platform of these trucks was about two feet, two and one-half inches above the top of the rail. Between the point of loading and discharging of the cotton, there was an overhead line six feet, ten and one-half inches above the rail of the track, so that between the deck or platform of the truck, and the overhead pipe line, there was a space of only four feet, eight inches. Of the existence of this overhead pipe line, the plaintiff had no knowledge, and was given no information. The guncotton was being transported in tin cans between three and four feet high, and containing about one hundred pounds

each. There was no guard rail, or other appliance on the trucks to prevent these cans from falling off. After loading the cotton on the trucks, the plaintiff, with his men, got on the trucks and started to purification house No. 6. After going some little distance, one of the cans fell off the truck and the train proceeded some little distance before the motorman got notice to stop and have it replaced. Finding it difficult to communicate with the motorman speedily, the plaintiff stood on the motor, next to the motorman, with his back in the direction in which the train was going, so that he could easily see if a can, or any of the men, fell off the trucks, and, if so, reach back and touch the motorman, and notify him to stop at once. This position was taken by the plaintiff for that purpose. After proceeding some little distance in this position, and while the train was moving at a rate of two or three miles an hour, he was struck by the overhead pipe and knocked down upon the track, and received the injury of which he complains. This injury was not only painful, but was serious and permanent in its nature. There is no evidence as to the height of any of the other pipe lines in the plant above the ground, nor is there any evidence that the other lines were of similar construction overhead to the one which inflicted the injury. For aught that appears in the testimony, the pipe that struck the plaintiff was the only one of low construction in the plant. The plaintiff was required, with his men, to ride on the truck carrying the cotton, in order to be present to unload it when it reached its destination. He denies that he had any other instruction as to how, or where, he was to ride, except as hereinbefore stated, or any knowledge of the existence of the overhead pipe which inflicted his injury, or that he was informed thereof. It is testified to by a witness for the defendant that it was "The general order in that plant, all over it, for nobody to ride standing upon the motor. Everybody understood

it." But there is no evidence that this general order was either published, or brought to the attention of the plaintiff, and the statement that everybody understood it, was, manifestly, only the expression of opinion of the witness.

On some of the subjects above mentioned, there is a conflict of testimony, but under the demurrer to evidence rule, the testimony for the plaintiff must prevail.

Upon this testimony, it cannot be said as a matter of law that Taylor knew or was chargeable with knowledge of the danger to which he was exposed, and which caused his injury. It was a question of fact to be determined by the jury under proper instruction from the court. The trial court was extremely liberal to the company in the matter of instructions. It gave every instruction requested on its behalf; in all, thirteen. These instructions covered every phase of the case, warranted by the evidence, that able and ingenious counsel could suggest, and yet the jury found for the plaintiff. We are unable to say that the verdict on these questions is either without evidence to support it, or that it is plainly contrary to the evidence.

[4, 5] We do not deem it necessary to discuss further than is hereinafter done the subject of imputed knowledge so ably presented by counsel for the company, as that question was submitted to the jury under instructions prepared by such counsel, without objection on the part of the plaintiff, and is concluded by the verdict. The verdict likewise concluded the question of the negligence of the defendant in the method of constructing its pipe lines and the alleged contributory negligence of the plaintiff in riding backwards. The granting of instruction A on behalf of the plaintiff is likewise assigned as error. This instruction is as follows: "The court instructs the jury that it was the duty of the defendant to use ordinary care to furnish to the plaintiff a reasonably safe place for the performance by the plaintiff of the work of his employment; if the jury

believe from the evidence that the defendant failed to use ordinary care to furnish the plaintiff a reasonably safe place for the performance of the work of his employment and as a direct consequence and result of said failure the plaintiff was injured without fault on his part and without knowledge of or opportunity of knowledge of any danger, then the jury must find for the plaintiff." The objection urged to the instruction is that there is no evidence to justify the court in embodying in the instruction the idea that the plaintiff had *no opportunity of knowledge of any danger;* the view of the defendant being that the plaintiff not only had *opportunity* to know of the danger, but that his knowledge of general conditions were such as to impute to him actual knowledge thereof. If there was any error in this respect, it was harmless, and the jury could not have been misled thereby, as this feature of the case was fully and completely covered by instructions 11 and 12 given at the instance of the defendant.

[6] Much has been said in the argument about "opportunity for knowledge," as though it were always the equivalent of imputed knowledge. But such is not the case. It is only when men of ordinary prudence and observation would have observed under like circumstances that it can be so construed. Mere failure to observe when there is no occasion for observation, is not negligence. It is only negligent ignorance that can be chargeable as the equivalent of knowledge. Knowledge of general conditions will not comprehend a particular danger, where men of ordinary care and prudence, placed in the same circumstances, and using their faculties in the usual way, would not have apprehended such danger. If the failure to observe, however, amounts to negligence, then observation will be imputed. Such was the case of *Lindsay* v. *New York, etc., R. Co.,* 112 Fed. 384, 50 C. C. A. 298, where a brakeman who has been continuously employed in a railroad yard

for over nine months, was injured by falling into a drain which, with 118 other similar drains, had existed in the yard during the whole time of his employment, and *Ragon* v. *Toledo, etc., R. Co.,* 97 Mich. 265, 56 N. W. 612, 37 Am. St. Rep. 336, where a brakeman who had been employed for a long while, and during all that time had walked over the railroad yard, was injured by stepping into an unfilled space between the ties of a railroad, plainly obvious, and with which the plaintiff was, or ought to have been, familiar, and *Green* v. *Cross,* 79 Tex. 130, 15 S. W. 220, where a section hand knew of just such defects in the railroad track, as the one which caused his injury, and continued his employment without notice to the master. Many other cases to the same effect might be cited. In all this class of cases, however, there was something to bring the defect to the attention of the party injured. Some occasion to observe, or the circumstances were such that a man of ordinary care and prudence would have observed. But in the case at bar, where we are required to draw all inferences favorable to the plaintiff which a jury might fairly draw, and to reject all inferences from the defendant's evidence favorable to it, except those which necessarily flow therefrom, we cannot infer that the plaintiff had knowledge of the height of the overhead pipe lines from the ground, in the absence of any evidence of the height of such pipe lines. He had never ridden on one of these trucks before. His previous employment had required him to walk about different parts of the plant, and while he may have observed the fact that there were overhead pipe lines at various points in the plant, there is no evidence that they interfered in any way with the discharge of his duties, or subjected him to any danger, or that there was any occasion for him to observe their height. If, as a matter of fact, the other overhead crossings were as low as the one which caused the injury complained of, it does not ap-

pear from the evidence, and we certainly cannot infer a knowledge of conditions which are not shown to have existed.

[7] While the plaintiff was being examined as a witness as to the instructions he had received immediately before the accident and by whom they were given, he was permitted to testify that Westcott was the foreman through whom he received his orders, that Westcott sent him to Bethel for instructions as to the particular job and the manner of doing it, and that when he got to the place where the work was to be done, Bethel pointed out a foreman, whose name Taylor did not know, and said the foreman would tell him how to handle the cotton and what to do with it, and this foreman instructed him to load guncotton on the trucks, and "to take my men and get on the trucks, and that the motorman knew the route; that he would carry me to the building." Objection was made to allowing the witness to give in evidence the statement above quoted, as it was not shown that the foreman was authorized to give any such instructions. The objection, if ever valid, was waived by the defendant proving the same fact by its principal witness, Westcott, who in his examination in chief by the defendant's counsel, and in response to a direct question from him, stated that "he was required to ride on the car at some place." That was the only issue. *Taylor* v. *Mallory,* 96 Va. 18, 30 S. E. 472; *Va. & S. W. R. Co.* v. *Bailey,* 103 Va. 205, 49 S. E. 33; *Norfolk Ry. & L. Co.* v. *Spratley,* 103 Va., 379, 49 S. E. 502; *Worrell* v. *Kinnear Mfg. Co.,* 103 Va. 719, 49 S. E. 988, 2 Ann. Cas. 997.

There was no error in the rulings of the trial court on other questions involving the admissibility of evidence. These objections have been considered, but they are of minor importance, involving no question of general interest, and need no discussion.

96

[8]·   It is assigned as error that the verdict for $10,000 was excessive, and that the error was not cured by requiring the plaintiff to release $2,000 of it, and accept a judgment for $8,000; and the plaintiff assigns as cross error the action of the trial court in requiring him to make the release. Acts 1906, p. 251.   It must be admitted that the evidence would have warranted a verdict for a much smaller amount, and if the jury had so found we could not have disturbed their verdict, but if the statements contained in the testimony on behalf of the plaintiff be accepted as facts, as they must be, there is ample testimony to sustain the verdict.   There is no measure of damages in cases of this kind, and there has not yet been discovered any standard by which to measure in dollars and cents the value of physical pain and suffering.   It is a matter which must be left to the judgment and discretion of an impartial jury, and no mere difference of opinion of the trial judge, however decided, will justify an interference with their verdict, unless it appears from the record that the jury has been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. *Norfolk & W. R. Co.* v. *Shott,* 92 Va. 34, 22 S. E. 811; *Hoffman* v. *Shartle,* 113 Va. 262, 74 S. E. 171.   What was said by this court in *Southern R. Co.* v. *Smith,* 107 Va. 553-560, 59 S. E. 372, 375, is peculiarly applicable to this case.   It was there said: "It is true that $15,000 is a larger verdict than we usually encounter as an award of damages for the loss of an arm; but this furnishes no warrant for our interference with the finding.   The question to be considered is not whether this court, if acting in the place of the jury, would give more or less than the amount of the verdict, but whether the damage awarded by the jury is so large or so small as to indicate that the jury has acted under the impulse of some undue motive, some gross error, or misconception of the subject.   There is no rule of law fix-

ing the measure of damages in such cases, and it cannot be reached by any process of computation. It is, therefore, the established rule, settled by numerous decisions extending from *Farish & Co.* v. *Reigle*, 11 Gratt. (52 Va.) 697, 62 Am. Dec. 666, to the recent case of *N. & W. Ry. Co.* v. *Carr*, 106 Va. 508, 56 S. E. 276, that this court will not disturb the verdict of the jury, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. The record in the case at bar furnishes no suggestion that the jury were influenced by partiality or prejudice, or by any misconception of the merits of the case; nor is there anything to indicate that they were not moved to their conclusion from a sense of right and justice."

[9, 10] There has been much difference of opinion among the courts, in the absence of a statute, as to the right of the court to put the plaintiff, in an action of tort, upon terms to accept a verdict for a reduced amount without the consent of the defendant. In England it has been held by the House of Lords that an appellate court had no power, without the consent of both parties, to put the plaintiff upon terms to accept a reduced amount, because it substituted the judgment of the court for the verdict of the jury, and was, therefore, an invasion of the defendant's right of a trial by jury. *Watt* v. *Watt*, L. R. App. Cas. (1905) 115, overruling *Belt* v. *Lawes* (1884), 12 Q. B. D. 356. There are similar holdings in a number of the States. See note 39 L. R. A. (N. S.) 1075. But the decided weight of authority is to the effect that if the verdict may be set aside as excessive, but it is not so excessive as to evince passion, prejudice or corruption, the plaintiff may be put upon terms to accept a reduced amount, although there is no measure of the damages, and if he accepts it, the defendant cannot complain. But it is only in such case

that the reduction can be made. See cases cited in notes 39 L. R. A. (N. S.) 1067; *Northern P. R. Co.* v. *Herbert,* 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; *Arkansas Cattle Co.* v. *Mann,* 130 U. S. 69, 9 Sup. Ct. 458, 32 L. Ed. 854. The basis of this holding is that, so far as the plaintiff is concerned, he is not compelled to accept the reduced amount, but may decline it and accept the alternative of a new trial, and hence is not deprived of his trial by jury, but, if he accepts, he is bound by his acceptance and thus far waives a jury trial and cannot appeal; and so far as the defendant is concerned, he has had his trial by jury whose adverse finding has been reduced in his favor, without impairing any other defenses he may have had. Such was the law in this State prior to the adoption of the act of 1906. Burks' Pl. & Pr., sec. 300, and cases cited. It is not necessary in this State that the losing party should consent to the remitter. *James River Co.* v. *Adams,* 17 Gratt. (58 Va.) 435. But by the act of 1906 (Acts 1906, p. 251) the plaintiff is no longer deprived of his right of appeal. He does not surrender his right of appeal by accepting judgment for the reduced amount, provided it is done under protest, but retains his right to insist on the verdict of the jury and to contest the correctness of the judgment of the trial court in reducing it. When the case reaches this court, it will affirm the judgment, upon the presumption of its correctness, in the absence of evidence to the contrary; but when the evidence is certified, and it appears that the verdict is not so excessive as to warrant the belief that the jury were influenced by partiality, prejudice, or corruption, or have been misled by some mistaken view of the merits of the case, and it also fails to disclose any standard by which the trial court could have measured the reduction, this court will uphold the verdict of the jury, because it is the tribunal appointed by law to ascertain the damages sustained. Neither the trial court nor this court

can act arbitrarily in the matter. It is the peculiar province of the jury to decide such cases under proper instructions from the court, and the court cannot substitute its judgment for the verdict of the jury. See cases cited in 2 Sutherland on Damages, sec. 459. The legislature has evinced an intention to limit the discretionary power of the trial court, not only by the act aforesaid, but also by the act forbidding directed verdict (Acts 1912, p. 52). If this conclusion is likely to lead to bad results, the appeal should be made to the legislature, which has placed a limit on the amount of recovery in case of death resulting from the wrongful act or neglect of another, and has likewise fixed the amount of compensation to be paid by employers to their servants who are injured in the service.

In the case at bar, we can perceive no guide by which the trial court could have measured the reduction made, and, while reluctant to interfere with the wise practice of permitting trial courts to reduce verdicts to amounts deemed reasonable and proper, we feel constrained to do so when there is no standard by which such reduction can be measured and the verdict is not plainly without evidence to support it. The judgment of the trial court in favor of the plaintiff for $8,000 will be affirmed, and this court will, in addition thereto, enter a judgment in favor of the plaintiff against the defendant for the further sum of $2,000, with legal interest thereon from the 21st day of June, 1917, the date of the verdict, in accordance with the statute in relation to releases, in such cases made and provided.

*Affirmed and additional judgment*
*for amount remitted.*

Prentis, J., dissenting as to additional judgment:

I concur without hesitation in the affirmation of the judg-

ment of the trial court for $8,000. I am constrained, however, to dissent from the conclusion of the majority to enter an additional judgment for $2,000 in favor of the plaintiff.

By the decided weight of authority, trial judges are vested with discretionary power to require a plaintiff to remit a part of his recovery, as ascertained by the verdict of a jury, or else submit to a new trial, in personal injury cases. 39 L. R. A. (N. S.) 1075, note. The statute (Acts 1906,.p. 251), which authorizes a review of that discretion by this court, was not intended either to take away or to diminish that power. Indeed, its existence is thereby expressly recognized. A verdict, then, which has been disapproved, and which comes to this court without the sanction of the trial judge has no such sanctity as that which properly attaches to a verdict which is approved by him. While it is true that there are no scales by which to measure human suffering, and the verdicts of juries in personal injury cases are generally approved, still there is a standard, based upon the common or average judgment of mankind, which sanctions and approves large verdicts for serious injuries and smaller verdicts for slight injuries. That standard is recognized by the act limiting the recovery to $10,000 where a negligent injury results in death, and by the amounts fixed in the Virginia workmen's compensation act (Acts 1918, p. 637), under which the maximum recovery is $4,000. It is also manifested in the verdicts which juries generally return, and which trial judges generally approve, for such injuries. In my opinion, all that the act of 1906 intended was to confer jurisdiction on this court to review the action of the trial courts where the verdict is reduced and the plaintiff accepts such reduction under protest. This court, then, should carefully weigh the evidence in such cases, bearing in mind the fact that the trial judge both saw and heard the plaintiff and his witnesses, and with the

usual presumption in favor of the correctness of the judg-
ment under review, and unless it is clear that the trial judge
has abused the discretion vested in him to prevent what
seems to him to be an injustice, this court should approve
his action.

"There is always a fair presumption that the verdict of
the jury is correct, and when the judge who presides at the
trial, who has heard all the evidence, witnessed all the pro-
ceedings and the manner of conducting the cause before the
jury, is satisfied with the verdict and refuses to set it aside,
an appellate court which cannot have an equal opportunity
for forming a just judgment ought not to interfere with-
out the strongest reasons for doing so. 'On the other hand,'
as was said by Judge Baldwin, in *Patteson* v. *Ford,* 2 Gratt.
(43 Va.) 19, 25, 'when the judge' (who presided at the trial)
'is dissatisfied with the verdict and grants a new trial, some
latitude must be allowed to his discretion; especially where
the propriety of its exercise is affirmed by a verdict on such
new trial for the party to whom it was granted.' In setting
aside the verdict, the trial court must, to some extent, pass
upon the weight of the evidence before the jury; and a
stronger case must be made in order to justify an appellate
court in disturbing an order granting a new trial, than
where it has been refused. The reason usually assigned
for this rule is that the refusal to grant a new trial oper-
ates as a final adjudication of the rights of the parties, while
the granting of the new trial simply invites further inves-
tigation, and affords an opportunity for showing the truth
without concluding either party. Barton's Law Pr., 725-6;
*Ruffner* v. *Hill,* 31 West Va. 428, 431-2 [7 S. E. 13]." *Chap-
man* v. *Va. Real Estate Co.,* 96 Va. 177, 188, 31 S. E. 74, 78.

"It would, indeed, be a futile and idle thing for the law to
give a court supervisory authority over the proceedings and
the manner of conducting a cause before the jury, and the
right to set aside the verdict of the jury therein because

contrary to the evidence, unless the judge vested with such power could consider to some extent at least the evidence in the cause; * * *." *Cardwell* v. *Norfolk & Western Ry. Co.*, 114 Va. 500, 506, 77 S. E. 612, 614.

In this case, under the evidence, I think that the trial judge properly reduced the verdict, and that it should not be increased beyond the amount approved by him, $8,000.

*Affirmed and additional judgment for amount remitted.*