## Wytheville

### MARIE DOVE WILLIAMSON v. SEABOARD AIR LINE RAILWAY.

#### June 14, 1923.

1. CARRIERS OF PASSENGERS—*Passes—Exemption from Liability for Negligence—Interstate Journey.*—Section 3930 of the Code of 1919 provides that agreements for exemption from liability for injuries caused by the carrier's negligence shall be invalid.

   *Held:* That this provision applies only to intrastate passes, and interstate passes where Congress has not legislated upon the subject.

2. CARRIERS OF PASSENGERS—*Passes—Exemption from Liability for Negligence—What Constitutes an Intrastate Journey—Stop-Over—Case at Bar.*—In the instant case plaintiff was traveling upon a pass from Florence, S. C., to Richmond, Va. The pass contained a clause exempting the carrier from liability for injury to the passenger. Plaintiff stopped off at La Crosse, Va., and at the time of her injury was about to board a train for Richmond and use the unused portion of her pass in completing her interstate journey.

   *Held:* That the fact of a stop-over did not change the character of the defendant's contract with plaintiff, or the character of her journey, and did not convert the pass from an interstate pass into an intrastate pass.

3. CARRIERS OF PASSENGERS—*Passes—Interstate Commerce—Occupation of the Field by Congress.*—The Hepburn act (34 Stat. at L. 584; U. S. Comp. St., sec. 8563) controls the rights and liabilities arising between passengers and carriers on free passes issued for transportation in interstate commerce, and therefore a State statute providing that exemptions by carriers from liability for negligence shall be invalid, does not apply to interstate passes.

4. COURTS—*United States Courts—Questions Arising Under the Laws of the United States—Interstate Commerce.*—The decision of all questions arising under the laws of the United States, and especially under the commerce clause of the Constitution, rests conclusively with the Federal courts.

5. INTERSTATE COMMERCE—*Passes—Congress has Occupied the Entire Field—Exemption from Liability for Negligence.*—Congress has "occupied the entire field" with respect to the regulation of interstate

passes issued under the Hepburn act, and State laws and State policies are no longer determinative of the rights of the parties. The act of Congress has ousted the State of jurisdiction over the subject, and agreements made thereunder exempting carriers from liability for negligence are valid and binding upon the parties.

Error to a judgment of the Circuit Court of Mecklenburg county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*E. P. Buford* and *G. M. Raney,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson,* and *Whiting C. Faulkner,* for the defendant in error.

WEST, J., delivered the opinion of the court.

Marie Dove Williamson sued the Seaboard Air Line Railway to recover damages for personal injuries.

The defendant demurred to the evidence and the jury, subject to the demurrer, fixed her damages at $10,000. The court sustained the demurrer and dismissed her suit. The plaintiff assigns error.

In October, 1917, the defendant issued to the plaintiff a pass for free transportation as a passenger from Florence, S. C., to Richmond, Virginia, and return. She traveled on the pass *en route* to Richmond as far as La Crosse, Virginia. The "Florence to Richmond" coupon was punched by the conductor, for the trip from Florence to La Crosse, and returned to her. On arriving at La Crosse she left the defendant's train for the purpose of going to Boydton, Virginia, via the Southern Railway. On December 14, 1917, she returned from

Boydton to La Crosse with the intention of traveling from La Crosse to Richmond on the unused portion of the "Florence to Richmond" coupon. The pass contained the following stipulations, which were signed by the plaintiff:

"This free ticket is not transferable and if presented by any other person than the individual named thereon, or if any alteration, addition or erasure is made upon it, it is forfeited and the conductor will take it up and collect full fare. The person accepting this free ticket agrees that the Seaboard Air Line Railway Company shall not be liable under any circumstances, whether of negligence of agents or otherwise, for an injury to the person, or for any loss or damage to the property of the passenger using the same. I accept the above conditions and certify I am not prohibited by law from receiving free transportation, and that this pass will be lawfully used."

On arriving at La Crosse the plaintiff was informed that the defendant's train was several hours late. After spending some time at the hotel, she went to the defendant's station and took a seat in the passenger waiting room. The weather was very cold and the ground was covered with snow about a foot deep. The waiting room is small and unusually warm. The heat from the stove and tobacco smoke of other passengers in the room made the plaintiff dizzy, and she says she remembers nothing from that time until three days later when she found herself in the Johnston-Willis hospital, in Richmond, and was told she had been injured by the defendant's train at La Crosse.

Two medical theories are advanced to account for her lapse of memory: (a) The injury caused *amnesia,* which obliterates all recollections of events occurring shortly before, as well as after, the injury; (b) that she was rendered dizzy by the heat and smoke in the waiting room which temporarily impaired her mental faculties.

The defendant's "house track," on which freight cars are placed and loaded and unloaded, is between the station and the "main line," along which passenger trains are boarded.   The space between the eastern rail of the house track and the western rail of the main line is ten feet and six inches.   The point at which passengers board northbound trains is about thirty yards south of the station, and between the main line and the house track.   The defendant had provided a pathway for its passengers by causing the snow to be removed from a narrow strip of ground from the doors of the waiting rooms eastwardly across the house track and thence between the house track and the main line, in a southerly direction, to the place at which the passenger coaches were stopped.   On the day of the accident the defendant had placed several freight cars on the house track, one south and two north of the pathway for passengers.   Just before the arrival of its northbound train one of the defendants' employees had placed a mail truck in the space between the box car and the main line, so as to reduce the space allowed for the pathway to such an extent as to expose passengers using the pathway to danger of injury from trains on the main line.   The train did not arrive until dark.   The plaintiff left the waiting room with other passengers and while walking the pathway between the mail truck and the main line, as passengers in front of her had done, was struck and seriously injured by some part of the locomotive as it passed her.

The plaintiff relies on two assignments of error, (a) the action of the court in sustaining the demurrer and entering judgment for the defendant, and (b) the court's refusal to overrule the demurrer and enter judgment for the plaintiff for the damages awarded by the jury.

The grounds of the demurrer relied on by the defendant were: (1) That the defendant was not guilty of actionable negligence, (2) that the plaintiff was guilty of contributory negligence, and (3) that the stipulations of the pass debarred recovery.

[1, 2] In our view it is unnecessary to discuss the first two grounds of the demurrer. The third, if sustained, is decisive of the case.

We cannot concur with the contention of the plaintiff that she was not using an interstate pass, or was not engaged in an interstate trip, and that the Virginia statute (Code, 1919, section 3930) invalidates the stipulation of the pass exempting the carrier from liability. Only as to intrastate passes, and interstate passes where Congress has not legislated upon the subject, can a State statute apply. *The Games Case,* 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105; *The Crovo Case,* 220 U. S: 364, 31 Sup. Ct. 399, 55 L. Ed. 498.

It is not controverted that the plaintiff requested a pass from Florence, S. C., to Richmond, Va., and return, or that the interstate pass was issued to her under the provisions of the Hepburn act. The Hepburn act provides that no common carrier, subject to its provisions, "shall, after January 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees and their families * *." U. S. Comp. St. §8563. And a carrier violating the act is subject to a penalty.

The company had recognized and accepted the pass as good from Florence to Richmond by passing Mrs. Williamson from Florence to LaCrosse; and in punching the Florence to Richmond coupon and returning it to her to be later used between LaCrosse and Richmond, followed its usual custom of allowing passengers

riding on free passes to stop-over at intermediate points. The plaintiff alleged in her declaration that she was a passenger upon the defendant's railroad, evidently by virtue of the unused free pass from LaCrosse to Richmond, then in her possession.

None of the conditions upon which the pass was issued had been violated.   No alteration, addition or erasure had been made upon it, and the conductor had no more authority to reject it than he had to reject a ticket for which a passenger has paid the full fare.

At the time of her injury she was about to board the train for Richmond and use the unused portion of her pass in completing her interstate journey.   The fact that she stopped off at LaCrosse for a few days could not change the character of the company's contract with her, or the character of the journey.   If so, the holder of such an interstate pass could, by making two stops in each State through which he traveled, convert his interstate pass into an intrastate pass, as to the greater portion of his journey, and thus deprive the carrier of the benefit of his contract, authorized by act of Congress, by which it was exempted from liability for the entire journey.   The character of the trip is generally determined by the contract between the parties.

[3] We cannot accede to the contention of the plaintiff that Congress has not legislated over the interstate carriage of passengers, and that the provisions of the Hepburn act (34 Stat. 584) do not control the rights and liabilities arising between passenger and carrier on a free pass issued for transportation in interstate commerce.

This question was decided by the Supreme Court of the United States on January 2, 1923, in the case of *Kansas City Southern Ry. Co.* v. *Van Zant*, 43 Sup. Ct. Reporter 176, 67 L. Ed. ——, and that case is conclusive

of the case at bar. Van Zant held an interstate pass issued by the railroad company under the Hepburn act while she was a citizen of Kansas, and was injured in Missouri while using it on an interstate journey. The pass contained the following condition: "The person accepting and using it thereby assumes all risk of accident and damage to person and baggage." The Missouri Supreme Court held, in harmony with the contention of plaintiff's counsel, that Congress had not legislated on the subject of the rights and liabilities of the parties in cases of interstate carriage of passengers under free passes, or respecting the validity of conditions or stipulations annexed to such passes, exempting the carrier from liability, and that the condition upon the pass was void under the laws and public policy of both States. The Supreme Court of the United States, reversing the judgment of the Missouri court, referring to the Hepburn act, at page 177 of 43 Sup. Ct. Reporter, said:

"The provision for passes, with its sanction in penalties, is a regulation of interstate commerce, to the completion of which the determination of the effect of the passes is necessary. We think, therefore, free passes in their entirety are taken charge of, not only their permission and use, but the limitations and conditions upon their use; or, to put it another way, and to specialize, the relation of their users to the railroad which issued them, the fact and measure of responsibility the railroad incurs by their issue, and the extent of the right the person to whom issued acquires, are taken charge of. And that responsibility and those rights, this court has decided the railroad company can control by conditions in the passes. Antecedently to the passage of the Hepburn act, we decided that a passenger who accepts a free pass may exempt a carrier from

responsibility for negligence, and no public policy is violated thereby. *Northern Pacific Railroad Co.* v. *Adams*, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513; *Boering* v. *Chesapeake Beach Ry. Co.*, 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 742.''

[4] The decision of all questions arising under the laws of the United States, and especially under the commerce clause of the Constitution, rests conclusively with the Federal courts. *Western Union Tel. Co.* v. *Bowles*, 124 Va. 735, 98 S. E. 645; *United States* v. *Hill*, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. 337.

[5] Under the *Van Zant Case*, *supra*, Congress has ''occupied the entire field'' with respect to the regulation of interstate passes issued under the Hepburn act, and State laws and State policies are no longer determinative of the rights of the parties.

To use the language of Harrison, J., in the *Bilisoly Case*, 116 Va. 562, 82 S. E. 91, the act of Congress has ''ousted the State of jurisdiction'' over the subject, and agreements made thereunder exempting carriers from liability for negligence are valid and binding between the parties.

The judgment sustaining the demurrer to the evidence will be affirmed.

*Affirmed.*