# Wytheville.

SOUTHERN RAILWAY COMPANY v. MATTIE WILMOUTH, ADMINISTRATRIX OF JOHN Y. WILMOUTH, DECEASED.

June 12, 1930.

Absent, Campbell and Epes, JJ.

The opinion states the case

*Wirt P. Marks, Jr.*, for the plaintiff in error.

*Fulton & Hall*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Plaintiff's decedent on January 17, 1925, fell from defendant's bridge and was drowned. His administratrix, under notice of motion, has recovered on account thereof a $10,000.00 judgment, and that judgment is now before us on a writ of error.

The defendant owned and operated a railroad running from Richmond to Danville and thence south into North Carolina and other States. Among its facilities in Richmond is a yard on the south side of the James river and a yard on its north side near the foot of Fourteenth street. These are connected by a single track bridge across that stream, whose general direction is north and south. In the Fourteenth street yard are several switch tracks which converge near its north end into a main single bridge track. In making up freight trains cars are brought from South Richmond to this Fourteenth street yard that they may be classified and placed in proper order. The tracks on the Fourteenth street yard were not long enough always to hold a completed train and hence they were arranged on

these short switch tracks into cuts or blocks which were afterwards attached to the engine in their proper order, and in the process of this make-up it is at times necessary that the engine move out on the bridge and over the river. This was the situation at the time of the accident. The engine, with certain cars attached, was out on the bridge, while a part of the train extended back into the yard. Along the east side of this bridge is a protected plank walkway. This walkway is for the convenience of employees and runs entirely across the river. Along the west side is a similar walkway, which does not, however, cross the river but ends at a point forty-nine feet south of a switch which is the last switch there and controls one of the converging tracks. This last switch is over the river as is the end of this plank walkway forty-nine feet beyond it. Its end is unprotected and unlighted. From there on between the frame work of the bridge at regular intervals are openings twelve feet, two inches long and three feet, two inches wide. It was at one of these openings that the west side walkway ended.

Wilmouth had been employed about this yard since 1913, and had been a member of the train crew which operated this particular train for about six months preceding his death. He came on duty around 6:40 p. m., took up his train book and lantern and proceeded, as was his duty, to get from the cars their initials and numbers. This was a part of his regular duty in preparing for departure this regular scheduled train which was to leave at 7:00 o'clock.

The night was dark and cloudy. These numbers and initials appear on both sides of the cars and so it was not necessary that one doing this work be on any particular side of the train. It could have been done from the east side with safety even though the train

had extended across the river, and it could have been done with safety from the west side up to the point where the plank walk ended.

A yard brakeman named Johnson went in front of Wilmouth to couple up the air hose between cars. When he reached the end of the plank flooring on the west side of the bridge he climbed along the end of the ties until he got between the ends of the first and second cars from the engine and about ten or twelve feet beyond the end of the plank flooring. When Johnson had gotten between these two cars Wilmouth called to him and asked him if that was the last car. Johnson said that it was, raised his lantern, read the number and initials, and gave them to Wilmouth. He then leaned down to couple up the hose and about that time heard a splash in the water and a sound like the tinkling of breaking glass. When he last saw Wilmouth, Wilmouth was two or three car lengths from the end of the plank flooring, but he seemed to be only ten or twelve feet away when he asked Johnson for the car number. Wilmouth fell through this opening and was drowned. At the time of his death he was engaged in taking the record of cars in that cut next to the engine, three of which were directly engaged in interstate commerce and billed for North Carolina.

The defendant demurred to the evidence. A verdict was returned for the plaintiff subject to this demurrer. It was overruled and judgment followed. Petitioner here charges that the trial court erred in:

1. Not holding that the manner in which the decedent met his death was purely speculative;

2. Not holding that the defendant was not guilty of negligence;

3. Not holding that the decedent assumed the risk; and

4. In the admission of certain testimony.

█ Under well established rules, it is our duty to affirm the judgment if there is evidence to sustain it.

█ The defendant was an interstate carrier, and the decedent at the time of his death was engaged in checking up cars that they might be moved to points without the State. He, therefore, was engaged in interstate commerce and so we are controlled by those Federal statutes which are applicable to this situation and by the decisions of Federal courts so far as they have spoken. *St. Louis, etc., Rwy,* v. *Seale,* 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129; *Pecos and Northern Rwy.* v. *Rosenbloom,* 240 U. S. 439, 36 S. Ct. 390, 60 L. Ed. 730; *C. M. and St. Paul Rwy. Co.* v. *Coogan, Spec. Admrx.,* 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; *Philadelphia & Reading Ry. Co.* v. *Hancock,* 253 U. S. 284, 40 S. Ct. 512, 64 L. Ed. 907; *Williamson* v. *S. A. L. Rwy.,* 136 Va., 626, 118 S. E. 255; *N. & W. Ry. Co.* v. *Lumpkins' Admr.,* 151 Va., 173, 144 S. E. 485.

█ Since Congress has spoken we can look neither to section 162 of the Constitution of Virginia nor to Code, section 5793, for guidance.

█ █ There is nothing speculative about the manner in which decedent came to his death. He was following Johnson, the air coupler, southward across the bridge. On his left was the train and on his right was a protecting wall which ran along the extreme western edge of the bridge. Johnson had passed the north end of this twelve foot opening and in doing so had to climb along the ends of the ties. Wilmouth was following him and appeared to be only ten or twelve feet behind when he asked Johnson about the car number. In other words, he was then almost at the edge of this opening. He either fell into the river through the opening or, on suicide bent, jumped into it over the

west protecting bridge wall, and suicide is not to be presumed. Fresh, identified tracks on both banks of a ford give ample evidence of crossing.

Was the railway negligent? Unless there was negligence there can be no liability.

"The Federal employers' liability act [45 U. S. C. A. section 51-59] permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or insufficiency in plant or equipment that is not attributable to negligence." *Delaware, L. & W. R. Co.* v. *Koske,* 279 U. S. 7, 49 S. Ct. 202, 203, 73 L. Ed. 578; *Missouri Pac. R. Co.* v. *Aeby,* 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351.

This west-side walkway extended, as we have seen, forty-nine feet beyond the last switch and ended at an unprotected opening in the bridge. There are no structural reasons which prevented its continuance. There is a walkway on the east side the entire length of the bridge and it could have been extended in like manner on the western side. Similar conditions obtained in each instance. It is true, however, that there was no obligation on the part of the defendant to build a second walkway across the river. The wisdom of its construction rested in the road and courts will not undertake to control it (*Delaware, L. & W. R. Co.* v. *Koske, supra*) but when built reasonable protection for those who might be expected to use it was necessary, and a failure to provide such reasonable protection would be actionable negligence. *Black* v. *Portland Cement Co.,* 104 Va., 450, 51 S. E. 831; *Froman* v. *C. & O. Ry. Co.,* 148 Va., 148, 138 S. E. 658.

Did Wilmouth assume those risks incident to this opening in the foot bridge?

The common-law rule governing the assumption of risk is satisfactorily stated in *C. & O. Ry. Co.* v.

*Meadows*, 119 Va., 33, 89 S. E. 244, 251, where many cases are cited, both State and Federal: "The true rule of law deducible from the authorities is, that the servant assumes all the ordinary, usual and normal risks of the business after the master has used reasonable care for his protection, and also all such other risks as he knows of, or which were so unquestionably plain and clear that he must have known of their existence and their danger to him."

"Except as specified in section 4 of the act (45 U. S. C. A. section 54; Comp. St. section 8660) the employee assumes the ordinary risks of his employment, and, when obvious or fully known and appreciated by him, the extraordinary risks and those due to negligence of his employer and fellow employees. *Boldt* v. *Penn. R. R. Co.*, 245 U. S. 441, 445, 38 S. Ct. 139, 62 L. Ed. 385; *C. & O. Ry.* v. *Nixon*, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914;" *Toledo, St. L. & W. R. Co.* v. *Allen*, 276 U. S. 165, 48 S. Ct. 215, 216, 72 L. Ed. 513; *Delaware L. & W. R. Co.* v. *Koske, supra.*

When facts warrant its application it is a plea in bar.

It will be observed that the employee still assumes all extraordinary risks due either to the negligence of his employer or of his fellow servant when they are obvious or fully known and appreciated. The federal statutes dealing directly with this subject appear as sections 51 and 54, 45 U. S. C. A. (Act Cong. April 22, 1908, chapter 149, sections 1 and 4).

Section 51 has changed the common law rule and makes the carrier liable for all ordinary negligent acts of fellow servants which result in or contribute to death or injury, when engaged in interstate commerce. *Chicago, M. & St. P. Ry. Co.* v. *Coogan*, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; *Reed* v. *Director*

*General of Railroads*, 258 U. S. 92, 42 S. Ct. 191, 66 L. Ed. 480. Before the enactment of this statute employees assumed this risk as one incident to service. *N. & W. Ry. Co.* v. *Nuckol's Admr.*, 91 Va. 193, 21 S. E. 342; 26 Cyc. 1076.

 ██ Did any fellow servant do anything which he ought not to have done or fail to do that which he should have done which contributed to the accident?

If there was negligence at all it must be charged against Johnson. For clearness we will restate the situation: Johnson was a member of the train crew and an air coupler, and Wilmouth was taking the numbers and initials of cars which made up the train. This work was being done on a dark night, cloudy and misty.

When the evidence first places these men, immediately preceding the accident, Johnson was going out on the bridge and Wilmouth was two or three car lengths behind him. Wilmouth had a lantern and Johnson knew it. When Johnson reached the opening to avoid it he climbed along the ends of the ties to the space between the first and second car from the engine. Wilmouth then spoke and asked him if it were the last car. Johnson answered that it was. At this time Wilmouth was ten or twelve feet back. Johnson then had no reason to believe that Wilmouth was ignorant of the situation in which he stood. He knew that he had a lantern and that he had long been familiar with yard conditions. He had seen the opening and had no reason to think that Wilmouth would not see it, moreover he was reassured by what was said when Wilmouth asked him if that were the last car, for when Johnson had told him it was and had given him the number and initials there was no occasion for Wilmouth to advance further and the very fact of inquiry

shows that Wilmouth knew that he had reached the point of danger, the end of. the walk. A fellow servant is not required to give warning until he knows or has reason to believe that his co-employee is oblivious of the situation. *Toledo, St. L. & W. R. Co.* v. *Allen, supra.* It must appear that the plaintiff was in a "position of peril and oblivious thereof." Johnson was not negligent and no liability follows because of his failure to warn.

 Said section 54 (45 U. S. C. A.) left the law as to assumption of risks unchanged except "where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The violation of no statute has been suggested save said section 51. It dealt with the doctrine of fellow servants and that we have considered. It also provides for care in the selection of tools, equipment and appliances, and against defects in tracks, roadbeds, etc. As to them the employer is not an insurer but is only required to exercise reasonable or ordinary care to provide reasonably safe equipment and appliances and a reasonably safe place in which to work. *Delaware, L. & W. R. Co.* v. *Koske, supra; Baltimore & Ohio S. W. R. Co.* v. *Carroll,* 280 U. S. 491, 50 S. Ct. 182, 74 L. Ed. 566, decided February 24, 1930. This was the common-law rule (Sherman and Redfield on Neg., 6th ed., section 192), and so this statute in this respect creates no new right or obligation. The master must still exercise due care in furnishing a reasonably safe place where work is to be done and the servant assumes risks ordinarily incident thereto, and in addition extraordinary risks "when obvious or fully known or appreciated by him." *Seaboard Air Line Ry. Co.* v.

*Horton*, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915 C, 1, Ann. Cas. 1915 B, 475.

In that case a locomotive driver was injured by the bursting of a glass gauge under excessive pressure. The gauge did not have as a protective device the customary glass shield in front of it. The engineer knew of the danger and made complaint. The case ultimately went off on a question as to the effect of that remonstrance (*Seaboard Air Line* v. *Horton*, 239 U. S. 595, 36 S. Ct. 180, 60 L. Ed. 458); but it is perfectly plain from a consideration of these two opinions that this experienced engineer could not have recovered if complaint had not been made.

*Pryor* v. *Williams*, 254 U. S. 43, 41 S. Ct. 36, 65 L. Ed. 120, is also an instructive case. There an employee was using a crowbar whose claws had become blunted with use and would not hold the spikes. All of this he knew. It slipped from a spike; he was thrown from a bridge and injured. The carrier was negligent in permitting the use of such a tool, but the employee who used it without objection assumed the risk. Recovery was denied as a matter of law.

In *Jacobs* v. *Southern Ry.*, 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970, it was held that the common law assumption of risk might be pleaded as a defense in bar notwithstanding the Federal statute. In that case, which affirmed an appeal from this court, it appears that a fireman who had temporarily forgotten the existence of a cinder pile, tripped on it when boarding his engine and was hurt. The court held that this cinder pile negligently left upon the track violated no federal statute, and that the employee, who knew or should have known of its existence, assumed the risks which it occasioned. It comes back to this: An employee assumes ordinary risks and all other risks, whether due to negligence or not, when obvious or

when fully known and appreciated by him and he will not be heard to say that he did not see those things which he must have seen. *S. A. L. Ry. Co.* v. *De-Loatch*, 149 Va. 338, 141 S. E. 121, 123; *Davis* v. *Powell*, 142 Va. 711, 125 S. E. 751, 128 S. E. 242; *Lloyd* v. *N. & W. Ry. Co.*, 151 Va. 409, 145 S. E. 372; *N. & W. Ry. Co.* v. *Lumpkins*, 151 Va. 173, 144 S. E. 485.

 It is perfectly true that opportunity for knowledge is not always the equivalent of imputed knowledge and knowledge of general conditions is not necessarily knowledge of a particular danger. The test is what ordinary men would have observed, using their faculties in the usual way. *DuPont De Nemours & Co.* v. *Taylor* 124 Va. 750, 98 S. E. 866; *N. & W. Ry. Co.* v. *Lumpkins, supra.* Wilmouth had worked about this yard since 1913 and had been on this particular crew six months. The danger was obvious, that he had actual knowledge of it cannot be doubted. As to this there is no conflict of evidence.

In *S. A. L. Ry. Co.* v. *DeLoatch, supra*, this court said: "The facts about the condition of the step at the time of the accident are undisputed and must have been known of and appreciated by plaintiff's intestate, who had been using it all day. Under these circumstances, he assumed all the risks arising out of the master's negligence, if any. The facts being undisputed, it was for the court to say whether plaintiff's intestate was or ought to have been acquainted with the risk."

 Under the federal practice: "It is the duty of the judge to direct a verdict in favor of one of the parties when the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different finding." *Baltimore & Ohio R. Co.* v. *Groeger,* 266 U. S. 521, 524, 45 S. Ct. 169, 171, 69 L. Ed. 419.

Under our practice the same results are reached if the necessities of the case require it, by virture of sections 6251 and 6363 of the Code. *Flannagan* v. *Mutual Ins. Co.*, 152 Va. 38, 146 S. E. 353.

Wilmouth was engaged in interstate commerce. His death was due to no act or omission of a fellow servant, but apparently to some inadvertence or lapse of memory as to the construction of this unguarded walkway. The danger thus occasioned was obvious and must have been known and appreciated by him. He accepted the situation without protest and so assumed attendant risks.

The judgment of the court must be reversed, and it is so ordered.

*Reversed.*